756 So.2d 1116 (2000)
David Moorer IKNER, Appellant,
v.
STATE of Florida, Appellee.
No. 1D99-3396.
District Court of Appeal of Florida, First District.
May 10, 2000.
*1117 Nancy A. Daniels, Public Defender and David A. Davis, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Karla D. Ellis, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, J.
The issue in this appeal is whether the trial court erred in denying a motion to suppress evidence seized from the defendant's car in the course of an investigative detention. We conclude that the police officers exceeded the scope of the detention, and therefore we reverse. Assuming the detention was initially justified by a reasonable suspicion, the search of the defendant's car took place after the purpose of the detention had been achieved. Because the officers had no legal ground to detain the defendant by the time they searched the car, the evidence produced as a result of the search is inadmissible.
Officer James O'Hara of the Escambia County Sheriff's Office was patrolling a residential area at 11:00 p.m. on the evening of November 26, 1998, when he noticed something that aroused his suspicion. A car proceeded with no running lights down to the end of a dirt road and then stopped. Deputy O'Hara drove down the same road and parked his police cruiser so that it was facing the car. He could see that there were two men seated inside. At that point he decided to investigate further so he signaled to the occupants by turning on his lights.
The defendant, David Ikner, emerged from the driver's side of the car, but Deputy O'Hara told him to get back inside. Two other deputies arrived at the scene, and the defendant got out of the car once again, this time at the officers' request. The officers conducted a pat down of the defendant and his passenger but did not find any weapons or contraband. Deputy O'Hara then asked the defendant to identify himself and to explain what he was doing in the neighborhood. The defendant told the officers that he and his friend were drinking beer in the car. He gave the officers his name and explained that he lived with his grandmother in a house about forty yards away. He pointed out his house, and the officers went over and knocked on the door. The woman who answered the door verified that she was the defendant's grandmother.
Despite this explanation, the officers asked the defendant if they could search his car. In response, the defendant said that the car belonged to his mother and he just shrugged his shoulders as if to say that he did not care. The officers did not interpret this gesture as consent but they nevertheless continued with their investigation. A trained police dog sniffed the exterior of the car and alerted on several areas. The officers then searched the car *1118 and found a small quantity of suspected cocaine pressed down into the front seat. The defendant denied any knowledge of the cocaine and, consequently, the officers decided to perform a cobalt field test on his hands. This test revealed that at some point the defendant had touched the cocaine.
After the defendant was formally charged with possession of cocaine, he filed a motion to suppress. The state sought to justify the seizure on the ground that it was done in the course of a lawful detention. Deputy O'Hara testified at the suppression hearing that he was aware of previous reports of gambling and illegal drug activity in the area. He said that although he had no reason to believe the defendant was committing any particular crime, he did not think that the defendant was merely drinking beer in the car. Furthermore, he explained that his suspicion was not dispelled by the information he obtained from the defendant's grandmother. Even though he had verified the defendant's identity and place of residence, Deputy O'Hara said that the situation "just didn't feel right" to him.
The trial court denied the motion to suppress on the ground that the officers had a right to detain the defendant at the time the cocaine was seized. Following the denial of the motion, the defendant entered a plea of nolo contendere, reserving the right to appeal. Both parties agreed that the issue raised by the motion was dispositive. The trial court accepted the plea, adjudicated the defendant guilty of possession of cocaine, and placed him on probation for twenty-four months. The defendant then filed a timely appeal to this court to review the order denying his motion to suppress.
A reviewing court must accept the trial court's findings of fact in an order on a motion to suppress, provided those findings are supported by the record. However, a suppression order that turns on an issue of law is reviewed by the de novo standard of review. See Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); State v. Setzler, 667 So.2d 343 (Fla. 1st DCA 1995). Whether a particular set of facts can justify a finding that a police officer had a reasonable suspicion to conduct an investigative detention is essentially a question of law. See Ornelas. Hence, the order at issue here is reviewable by the de novo standard.
We begin our analysis with the fundamental proposition that a police officer has a right to briefly detain a suspect based on a reasonable and articulable suspicion that the suspect has committed or is about to commit a crime. The right to detain a suspect was originally applied in the context of a stop and frisk to protect the officer from danger. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Although not expressly authorized in Terry, the right to detain a suspect is now also applied to investigative detentions not involving officer safety. In United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Court held that a reasonable suspicion of criminal activity warrants a temporary detention for the purpose of questioning limited to the reason for the detention.
An investigative detention must be brief, and the actions of the police officers must be designed to achieve only the limited purpose for detaining the suspect. As the Supreme Court explained in Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325-26, 75 L.Ed.2d 229 (1983), an investigative detention "must be temporary and last no longer than is necessary to effectuate [its] purpose," and the "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." See also United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). The burden is on the prosecution to show that the detention was sufficiently limited in scope and duration. See Royer.
*1119 It follows from these authorities that an investigative detention can be valid only as long as a reasonable and articulable suspicion continues to exist. The suspect must be released if the investigation dispels the concern that initially justified the detention and if the officers have not acquired any other basis to continue the detention. See United States v. Alarcon-Gonzalez, 73 F.3d 289 (10th Cir.1996) (noting that once the reason justifying the initial stop is dispelled, further detention unsupported by reasonable suspicion violates the Fourth Amendment). As the court explained in United .States v. Soto-Cervantes, 138 F.3d 1319, 1322 (10th Cir. 1998), a "reasonable suspicion must exist at all stages of the detention, although it need not be based on the same facts throughout."
Applying the criteria established in Royer, we conclude that the officers exceeded the limited scope of an investigative detention. When Deputy O'Hara first observed the defendant driving at night without lights in a residential area, he might have suspected that the defendant was a potential burglar. We need not determine whether this suspicion was reasonable, however, because it was completely dispelled, in any event, by the investigation that followed. The defendant answered all of the questions the officers asked him, and a pat down revealed that he did not have a weapon. As the officers quickly learned, the defendant was telling them the truth when he told them that he lived with his grandmother in a house nearby. When the officers learned the defendant's identity and verified that he was a resident of the neighborhood, they had no reason to detain him further. Officer O'Hara said that the situation still "didn't feel right" to him, but this instinct, however genuine, does not amount to a reasonable and articulable suspicion that the defendant was committing or about to commit a crime.
For these reasons, we conclude that the defendant's motion to suppress should have been granted. Because the officers no longer had a reasonable basis to justify an investigative detention at the time they searched the defendant's car, the cocaine they retrieved from the car is not admissible in evidence.
Reversed.
BARFIELD, C.J., and VAN NORTWICK, J., CONCUR.