780 So.2d 1026 (2001)
Dennis McMASTER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-1672.
District Court of Appeal of Florida, Fifth District.
March 30, 2001.
*1027 James B. Gibson, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Dennis McMaster appeals the order placing him on probation and sentencing him to time served following his plea of nolo contendere to charges of possession of cocaine and drug paraphernalia. He had previously filed a motion to suppress and the State and McMaster stipulated that the order denying that motion was dispositive of the case. McMaster argues that it was error to deny the motion to suppress because the police officers lacked reasonable suspicion to stop his car and seize the drugs and paraphernalia from his possession. We agree and reverse.

Factual Background
The only testimony at the suppression hearing came from the two officers who stopped McMaster. Officer McLean testified that he and Corporal Bennett were performing a general security patrol in a high crime area surrounding an abandoned school when they saw headlights coming out from the back of the building. They followed the car onto Southwest Fifth Street in Ocala and initiated a stop. McMaster, the only occupant of the car, told the officers that he was looking for a prostitute. Corporal Bennett called for a canine unit while Officer McLean took information from McMaster. Officer McLean further testified that the dog alerted on the driver's side door, at which point McMaster confessed to having cocaine on the dash.
Corporal Bennett testified that the abandoned building is a location known for drug and prostitution activity and that the police routinely check the area. At approximately 11:00 p.m., he and Officer McLean drove around the building and saw a vehicle drive away. They followed it for half a block before stopping it. In his deposition, Corporal Bennett stated that he had not observed the car long enough to determine whether he could charge the occupant with loitering and prowling. Corporal Bennett admitted that McMaster had not committed any traffic infractions. When McMaster's first explanation for his presence behind the building did not satisfy the officers, McMaster then explained that he had been behind the building with a prostitute who had jumped out of the car *1028 when she saw the police car. There was no testimony that the officers saw anyone flee the car.
The trial court denied the suppression motion "under the circumstances ... and based on the history of the area."

Standard Of Review And The Issue To Be Resolved
A trial court's ruling on a motion to suppress comes to this court clothed with a presumption of correctness, and we must interpret the evidence and reasonable inferences in a manner most favorable to affirming that decision. San Martin v. State, 717 So.2d 462, 469 (Fla.1998), cert. denied, 526 U.S. 1071, 119 S.Ct. 1468, 143 L.Ed.2d 553 (1999); Warren v. State, 701 So.2d 404 (Fla. 1st DCA 1997). Appellate review of a motion to suppress can present mixed questions of law and fact. Lester v. State, 754 So.2d 746 (Fla. 1st DCA 2000). The findings of fact made by the trial court are reviewed pursuant to the substantial competent evidence standard. Ikner v. State, 756 So.2d 1116 (Fla. 1st DCA 2000); Warren. The trial court's application of the law is reviewed pursuant to the de novo standard. Ikner; State v. Ramos, 755 So.2d 836 (Fla. 5th DCA 2000); Warren. Thus we proceed to review the findings of fact and the trial court's application of the law to the facts pursuant to these standards.
The issue presented is whether the law enforcement officers, based on the facts and circumstances, had a reasonable suspicion to stop McMaster's vehicle. If they did not, then the drugs they recovered from McMaster's vehicle are the fruit of an illegal stop and must be suppressed.

Reasonable Suspicion To Stop The Vehicle
We begin our analysis of the issue before us with the Fourth Amendment to the U.S. Constitution and article 1, section 12 of the Florida Constitution which guarantee to all citizens the right to be protected from unreasonable seizure. The constitutional jurisprudence that has sprung from this protected right recognizes three levels of encounters that law enforcement may have with citizens: 1) consensual encounters, during which the citizen remains free to leave at will, where a citizen may either voluntarily comply with a police officer's request or simply choose to ignore it; 2) an investigatory stop based on reasonable suspicion; and 3) an arrest supported by probable cause that a crime has been or is being committed. State v. Roux, 702 So.2d 240 (Fla. 5th DCA 1997) (citing Popple v. State, 626 So.2d 185 (Fla.1993)).
We are here concerned with an investigatory stop and, based on the facts and circumstances of this case, we must remain mindful of the general rule that the temporary detention of an individual during the stop of an automobile by a law enforcement officer, even if for a brief period and limited purpose, constitutes a seizure and invokes Fourth Amendment protections. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); State v. Jones, 483 So.2d 433 (Fla.1986); Sapp v. State, 763 So.2d 1257 (Fla. 4th DCA 2000).
Section 901.151(2), Florida Statutes, provides that a police officer may reasonably detain a citizen temporarily if the officer has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime. Therefore, "an investigatory stop requires a well-founded, articulable suspicion of criminal activity. Mere suspicion is not enough to support a stop." Popple, 626 So.2d at 186 (citing Carter v. State, 454 So.2d 739 (Fla. 2d DCA 1984)); see also Hunter v. State, 660 So.2d 244 (Fla.1995), cert. denied, 516 U.S. 1128, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996); Ramos; Bailey v. State, 717 So.2d 1096 (Fla. 5th DCA 1998). This rule has been applied by the courts many times to investigatory stops of individuals in automobiles. See, e.g., Jaudon v. State, 749 So.2d 548 (Fla. 2d DCA 2000) (holding that evidence should have been suppressed where officers stopped defendant in parking *1029 lot to "dispel their suspicions about his conduct"; defendant's act of parking, walking through hole in fence, and running through an abandoned building did not provide a reasonable suspicion that criminal activity was afoot); Brown v. State, 687 So.2d 13 (Fla. 5th DCA 1996) (defendant's act of sitting in parked truck at dusk in wooded area known for illegal dumping and making furtive movement when officers approached was not sufficient to give rise to founded suspicion of criminal activity or justify detention). Thus we must determine whether the police in the instant case had a reasonable suspicion of criminal activity to justify an investigatory stop of McMaster in his automobile.
A reasonable suspicion is "a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." Bailey v. State, 717 So.2d 1096, 1097 (Fla. 5th DCA 1998) (citing State v. Hunter, 615 So.2d at 727, 731 (Fla. 5th DCA), rev. denied, 626 So.2d 205 (Fla. 1993)). Thus the legitimacy of the stop must be determined by consideration of the totality of the circumstances surrounding it. Brown v. State, 719 So.2d 1243 (Fla. 5th DCA 1998). Factors that may reasonably suggest a suspect's possible commission of a crime include the location (for example, a high crime area), physical appearance of the suspects, the behavior of the suspects (for example, unprovoked flight), the appearance of the motor vehicle, and anything incongruous or unusual in the situation. Brown, 719 So.2d at 1245; Bailey, 717 So.2d at 1097; Hunter, 615 So.2d at 731-32. The State contends that there are two factors that justify the stop in the instant case: location in a high crime area and the behavior of McMaster in allegedly attempting to flee the officers.
The State suggests that McMaster's presence in a location which is a high crime area is sufficient to establish a reasonable suspicion. However, it is well settled that an individual's presence in a high crime area alone is not sufficient to establish a reasonable suspicion on the part of law enforcement officers to conduct an investigatory stop of that individual. See Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.") (citing Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)); State v. Gandy, 766 So.2d 1234 (Fla. 1st DCA 2000); Lester; Huntley v. State, 575 So.2d 285 (Fla. 5th DCA 1991).
The State further suggests that if location alone is not sufficient to establish a reasonable suspicion in the instant case, another factor existed: McMaster left the area as the police officers were approaching and evidence of flight from the police in a high crime area is enough to provide them with reasonable suspicion to justify a stop of the defendant. The Florida courts have previously held that flight from law enforcement officers in a high crime area was not enough to constitute a reasonable suspicion for an investigatory stop. See, e.g., Pritchett v. State, 677 So.2d 317 (Fla. 1st DCA 1996); Gipson v. State, 537 So.2d 1080 (Fla. 1st DCA 1989); Bastien v. State, 522 So.2d 550 (Fla. 5th DCA 1988). However, the United States Supreme Court has recently held to the contrary in Wardlow. Pursuant to the conformity clause contained in article 1, section 12 of the Florida Constitution, we are required to resolve search and seizure issues in accordance with the Fourth Amendment of the United States Constitution as interpreted by the United States Supreme Court. Holland v. State, 696 So.2d 757 (Fla.1997); Perez v. State, 620 So.2d 1256 (Fla.1993); Bernie v. State, 524 So.2d 988 (Fla.1988); Gandy; Warren. Thus Wardlow, a decision that is binding on this court, has effectively overruled Pritchett, Gipson, Bastien and other Florida cases with similar holdings. See State v. O.S., 767 So.2d 509 (Fla. 4th DCA 2000); Copeland v. State, 756 So.2d 180 (Fla. 2d DCA 2000).
*1030 In Wardlow, the Court held that although presence in a high crime area is not sufficient to justify a stop of an individual, it is a factor that may be considered along with other factors in determining whether a reasonable suspicion exists. The Court further held that another factor that may be considered is the unprovoked flight of the individual upon noticing the presence of the police. The Court concluded that the officers had a reasonable suspicion to stop the respondent because "it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion but his unprovoked flight upon noticing the police." 528 U.S. at 124, 120 S.Ct. 673. Thus presence in a high crime area and unprovoked flight upon noticing the police are sufficient to find a reasonable suspicion to stop and investigate. Therefore, we must determine whether these two factors are sufficiently established by the evidence in the instant case as the State suggests.
The evidence contained in the record clearly establishes that McMaster was in a location that the police officers considered to be a high crime area. However, the record is devoid of any evidence that McMaster engaged in unprovoked flight upon noticing the presence of the officers and, in fact, the testimony establishes that McMaster did not flee the police officers.[1] We find from the evidence in the record that all the officers had was a curiosity about what McMaster was doing driving through a high crime area at 11:00 at night. There are no other facts which support a reasonable suspicion for the stop in the instant case. Because the officers did not have the reasonable suspicion necessary to authorize an investigatory stop, the initial detention was illegal and the resulting acquisition of the cocaine and drug paraphernalia was the fruit of an unconstitutional seizure. The trial court erred in denying the motion to suppress.
REVERSED.
THOMPSON, C.J., and HARRIS, J., concur.
NOTES
[1] The testimony of the arresting officers is as follows:

Q. And describe for us what you saw.
A. Myself and Corporal Bennett, we were driving in from the north side of the building. As we rounded the building, we seen a set of headlights coming out of the back of the building.
Q. And were you in a marked patrol unit?
A. Yes, we were.
Q. Okay. What happened after that?
A. We followed the vehicle out onto Southwest Fifth Street. And I could look at my notes and tell you exactly
. . . .
Q. Okay. You can go ahead and look.
A. I don't have the exact location where we made the traffic stop, but it was Southwest Fifth Street and one of the cross streets right adjacent to Matthew Cippio.
Q. Would youhow long would you characterize you followed this vehicle?
A. Maybe 30 to 45 seconds.
Q. So not very long?
A. Not very long.
On cross examination of one of the officers, by reference to a deposition previously taken, McMaster's attorney asked the following questions and elicited the following answers about whether McMaster was loitering and prowling in the area:
Q. Do you recall in that same deposition (The defense attorney refers to the page and line number in the deposition)
Q. "The car didn't flee from us. It just left real quick. L and P borderline, but it left real quick."
A. Correct.