806 So.2d 590 (2002)
Bryan E. JONES, Appellant,
v.
STATE of Florida, Appellee.
Nos. 5D00-1532, 5D00-1653.
District Court of Appeal of Florida, Fifth District.
February 1, 2002.
James B. Gibson, Public Defender, and Marvin F. Clegg, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, R.B., J.
On the evening of February 24, 1996, Bryan E. Jones and his co-defendant, William C. Blankenship, were arrested and charged with two counts of burglary of a dwelling,[1] grand theft[2] and one count of *591 petit theft[3] (the "burglary case"). Shortly thereafter, Jones was released on bond. Subsequently, Jones failed to appear for his arraignment and following the issuance of a bench warrant, was arrested in South Carolina three years later. The State then filed a separate case charging Jones with failure to appear at his 1996 arraignment (the "failure to appear" case).[4]
Jones moved to suppress the evidence seized from his vehicle and the statements he made to police at the time of his 1996 arrest in the burglary case. After a hearing, the trial court denied the motion. Subsequently, the State filed a notice of its intention to seek habitual offender sentencing in both cases, and the matter was set for trial. Immediately after the jury was selected for the burglary case, Jones entered open pleas of nolo contendere to all counts in both cases. Although Jones advised the trial court that he wished to reserve his right to appeal the denial of his motion to suppress, the State argued, and the trial court concluded, that the motion to suppress did not present a dispositive issue, and could not be appealed. We agree that the motion did not involve a dispositive issue and dismiss the appeal of the burglary case.[5] Jones also argues that the trial court erred when it imposed consecutive habitual offender sentences on him for the burglary case and the failure to appear case. We find no error in the trial court's decision and affirm Jones's consecutive habitual offender sentences.
In his motion to suppress, Jones claims that the deputies did not have any reasonable suspicion to stop his vehicle. The record suggests otherwise. On the evening of February 24, 1996, Sergeant Marianne Clelland of the Seminole County Sheriff's Department, observed a blue/ green minivan moving at about fifteen miles per hour, well below the posted speed limit on the road upon which it was traveling. Sergeant Clelland saw that the driver of the minivan was a white male, with blond hair, wearing a baseball cap. She did not stop the van, but proceeded to a nearby shopping center to assist a stranded motorist. Approximately two minutes later, as Sergeant Clelland neared the stranded motorist, four juveniles approached Sergeant Clelland and told her that they had just seen a white man jump a wall on the street Sergeant Clelland had just come from and enter the passenger side of a blue/green minivan driven by a white man with a baseball cap. The juveniles stated that the man was wearing dark clothing and carrying a box, which appeared to contain a computer.
Sergeant Clelland immediately notified a nearby deputy by radio of the information she had just received. Shortly thereafter, the deputy stopped the minivan and Sergeant Clelland arrived. Sergeant Clelland recognized the van as the one she had seen just minutes before and observed that it matched the description given by the juveniles. As Sergeant Clelland approached the van, she could see a white box in plain view. The occupants of the minivan were ordered out of the vehicle by the deputies and asked for identification. Jones, the passenger in the minivan, provided a false name to the deputy. About this time, two of the juveniles arrived at the scene and identified Jones as the person they had seen jumping the wall with the white box. Jones was then arrested for obstructing the deputies by providing a false name and the van was searched. A significant amount of stolen property was found in the van. The property was subsequently identified by its owners as having been taken in several burglaries.
*592 When Jones entered his pleas, the trial judge advised him that the motion to suppress was not dispositive of the case and could not be appealed if Jones pled guilty or nolo contendere to the charges. The trial court gave Jones a detailed explanation regarding the right to appeal a dispositive motion to suppress and explained that Jones's motion was not dispositive because the State could convince a jury of Jones's guilt without the evidence found as a result of the search, based on the testimony of Sergeant Clelland, the juveniles, the owners of the burglarized residences, and the testimony of Blankenship, the driver of the minivan.[6] We agree with the trial court's analysis.
A defendant may appeal a conviction based on a guilty or nolo contendere plea if he expressly reserves the right to appeal a prior dispositive order of the trial court. Blanco v. State, 752 So.2d 79, 80 (Fla. 2d DCA 2000); see § 924.06(3), Fla. Stat. (2000); Fla. R.App. P. 9.140(b)(2)(A)(i). In the instant case, the trial court correctly found that the motion to suppress was not dispositive and so advised Jones at the time that the plea was entered. An issue is legally dispositive only if it is clear that regardless of whether the appellate court affirms or reverses the trial court's decision, there will be no trial. See Vaughn v. State, 711 So.2d 64, 65 (Fla. 1st DCA 1998), rev. denied, 722 So.2d 195 (Fla.1998); see also §§ 924.06(3), 924.051(4), Fla. Stat. (2000); Fla. R.App. P. 9.140(b)(2)(A). In Brown v. State, 376 So.2d 382 (Fla.1979), the supreme court explained its decision to require that the issue sought to be appealed be "dispositive":
The practice of allowing an appeal after a plea of nolo contendere is grounded upon the belief that "it expedites resolution of the controversy and narrows the issues to be resolved." These purposes are poorly served and, indeed, thwarted when a defendant is permitted to appeal nondispositive pretrial rulings. Instead of expediting resolution of the controversy, the procedure prolongs litigation by sanctioning, in effect, an interlocutory appeal. Because of the nondispositive nature of the appeal, the defendant faces the prospect of a trial even if he prevails on appeal. The inevitable is not avoided but merely postponed, thus further burdening the already severely taxes resources of our courts.
The more logical and efficient procedure to follow in this situation is to proceed to trial and fully ventilate all of the issues. In this way the matter will reach the appellate court in a familiar posture and with a full record upon which to base an intelligent decision.
Brown, 376 So.2d at 384 (footnote omitted). Regardless of the trial court's ruling on the motion to suppress, the other evidence available to the State would have been sufficient for the case to have gone to trial, and therefore, this issue was not dispositive of the case.[7] Accordingly, we dismiss Jones's appeal of the burglary case for lack of jurisdiction. See Teague v. State, 728 So.2d 1203 (Fla. 5th DCA 1999).
*593 Finally, Jones argues that it was error for the trial court to impose consecutive habitual offender sentences. We disagree. The trial court found Jones to be an habitual offender in both cases. The sentences imposed on each count of the burglary case were concurrent with each other but consecutive to the habitual offender sentence imposed in the failure to appear case. Jones did not object to the consecutive sentences, nor did he file a motion to correct sentence pursuant to Florida Rule Criminal Procedure 3.800(b). Accordingly, the issue was not preserved for appeal. See Maddox v. State, 760 So.2d 89 (Fla.2000). More importantly, the issue lacks merit. While Hale v. State, 630 So.2d 521 (Fla.1993) prohibits consecutive habitual offender sentences when a defendant's crimes arise out of the same criminal episode, a trial court may impose consecutive habitual offender sentences when the crimes are separate offenses. See Selby v. State, 774 So.2d 785 (Fla. 5th DCA 2000); Trotter v. State, 744 So.2d 583 (Fla. 2d DCA 1999). To be considered separate offenses, the court must consider "whether separate victims are involved, whether the crimes occur in separate locations, and whether there has been a temporal break between the incidents." Spratling v. State, 672 So.2d 54 (Fla. 1st DCA 1996). Clearly, Jones's failure to appear was unrelated to his burglary charges. Accordingly, the trial court was free to impose consecutive habitual offender sentences.
APPEAL DISMISSED.
AFFIRMED.
GRIFFIN and PALMER, JJ., concur.
NOTES
[1] §§ 810.02(1) & (2), 810.07, Fla. Stat. (1996).
[2] § 812.014(1) & (2)(c), Fla. Stat. (1996).
[3] § 812.014(1) & (2)(d), Fla. Stat. (1996).
[4] § 843.15(1)(a), Fla. Stat. (1996).
[5] Our case number 5D00-1532.
[6] Blankenship was also arrested and charged with the burglaries and thefts. He too filed a motion to suppress that was denied. At trial in 1997, Blankenship claimed that Jones bore sole responsibility for the crimes. Blankenship was found guilty and raised the same suppression issue on appeal. This court affirmed Blankenship's conviction and sentence without an opinion. See Blankenship v. State, 719 So.2d 914 (Fla. 5th DCA 1998).
[7] The jurisdictional issue notwithstanding, the trial court was correct on the merits. Jones challenges the traffic stop that ultimately led to his arrest and the search of his vehicle. Law enforcement may stop an automobile and request identification from its occupants so long as the officers have a founded or reasonable suspicion that the occupants have committed, are in the process of committing, or are about to commit a crime. § 901.151(2), Fla. Stat. (1996); Hunter v. State, 660 So.2d 244, 249 (Fla.1995), cert. denied, 516 U.S. 1128, 116 S.Ct. 946, 133 L.Ed.2d 871 (1996); Davis v. State, 788 So.2d 308 (Fla. 5th DCA 2001). "An investigatory stop requires a well-founded, articulable suspicion of criminal activity." Popple v. State, 626 So.2d 185 (Fla. 1993). A reasonable suspicion is "a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in the light of the officer's knowledge." McMaster v. State, 780 So.2d 1026, 1029 (Fla. 5th DCA 2001) (quoting Bailey v. State, 717 So.2d 1096, 1097 (Fla. 5th DCA 1998)). Whether an officer has a "founded suspicion" for a stop depends on the totality of the circumstances, interpreted in light of the officer's knowledge and experience at the time of the stop. A mere "hunch" that criminal activity may be occurring is not sufficient. Ippolito v. State, 789 So.2d 423, 425 (Fla. 4th DCA 2001). Thus, when determining reasonableness, the court should consider factors that may reasonably suggest the suspect's possible commission of a crime such as the time, the location, the physical appearance of the suspects, the behavior of the suspects, the appearance of the motor vehicle, or anything incongruous or unusual that suggests possible illegal activity. McMaster, 780 So.2d at 1029; McCloud v. State, 491 So.2d 1164, 1167 (Fla. 2d DCA 1986); State v. Stevens, 354 So.2d 1244, 1247 (Fla. 4th DCA 1978). Based on the totality of the circumstances, we conclude that the officers had a reasonable suspicion to stop the vehicle and question its occupants.