36 So.3d 132 (2010)
James Earl JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D09-1380.
District Court of Appeal of Florida, Fifth District.
April 30, 2010.
Rehearing Denied June 4, 2010.
*133 James S. Purdy, Public Defender, and Kathryn Rollison Radtke, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Pamela J. Koller, Assistant Attorney General, Daytona Beach, for Appellee.
TORPY, J.
The sole issue framed for our review is whether the trial court erred in concluding that there existed an objectively reasonable basis to stop the vehicle in which Appellant was a passenger. Our disposition of this issue turns on whether police officers had "reasonable suspicion" to believe that the car contained a person who was the subject of outstanding arrest warrants, justifying the detention. Concluding that reasonable suspicion did support the stop, we affirm.
In early July 2008, Donald Evans, who had numerous outstanding arrest warrants, eluded Marion County deputies following a high speed pursuit. A week later, the Marion County Sheriff's Office received an anonymous tip through "crime stoppers" that Evans was staying at a house near Vanguard High School. Sheriff's Deputy Collins then contacted Courtney Wilson, Evans' bail bondsman, who Collins knew also desired to apprehend Evans. Wilson related that he had driven by the same house earlier in the day and "thought he had seen [Evans] out in front of the house." Wilson agreed to meet officers in the area of the house to assist them in attempting to find Evans. Once Wilson arrived in the area, it was agreed that he would watch the house and notify officers if he saw Evans.
Around midnight, Wilson saw a car pull up and stop at the house. Several people congregated around the car, then got in it and hurriedly drove away. Deputy Collins testified that Wilson informed him that Evans was a passenger in the car. Wilson denied telling Deputy Collins that Evans was in the car, but acknowledged that he informed Sheriff's deputies that the car was leaving at an accelerated rate of speed and that they should stop the car. In any event, the deputies stopped the car and ordered the occupants out at gunpoint. Evans was not among the occupants.[1] Appellant was one of the occupants in the car. During the stop, deputies located a gun beneath Appellant's seat and arrested him for possession of a firearm by a convicted felon.[2] The trial court did not specifically resolve the apparent conflict in the testimony regarding what Wilson had told the deputies. It did find, however, that the *134 stop was not the product of "whim, caprice or desire to harass all drivers leaving Evans' house." It concluded that, under the totality of the circumstances, the police officers acted reasonably in stopping the vehicle. We agree.
Reasonable suspicion is an amorphous legal concept. Ornelas v. United States, 517 U.S. 690, 695-96, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). The courts define it not by what it is, but by what it isn't. It's something more than a "mere hunch," but "considerably less" than a preponderance of the evidence. Wallace v. State, 8 So.3d 492, 494-95 (Fla. 5th DCA 2009) (quoting Ornelas, 517 U.S. at 695-96, 116 S.Ct. 1657). A "mere hunch" is a suspicion based on bare intuition alone without supporting facts. Id.
Whether Wilson had a reasonable belief that Evans was in the car is not the question here. The question is whether the deputies had a reasonable belief that Evans was in the car. Under these circumstances, we conclude that they did. The deputies were looking for Evans, a wanted felon. They believed he might be found at a particular house, based on information supplied by both an anonymous tip and Wilson. They set up surveillance for the express purpose of locating him. Wilson, who was familiar with Evans, agreed to watch for him and notify the deputies of Evans' presence. When Wilson advised them to stop a particular car that was leaving the area hurriedly, it was reasonable for the deputies to believe that Evans was in the car, whether Wilson actually saw Evans or not.
AFFIRMED.
EVANDER, J., concurs.
COHEN, J., dissents with opinion.
COHEN, J., dissenting.
I would reverse the trial court's order denying Appellant's dispositive motion to suppress because the deputies lacked a well-founded suspicion of criminal activity to justify the stop.
The difficulty with this case stems from the trial court's failure to make a finding as to whose testimony it found believable. What we are left with are the findings made in the written order denying the motion to dismiss, which reflect that while Courtney Wilson might have seen Donald Evans at the home earlier in the day, he did not see him at the home while he conducted surveillance. Wilson merely observed a small red sedan stop at the home where Evans was believed to be staying. There was no evidence Evans was in the sedan as it approached the home, and although he observed people congregate around the sedan, Wilson "could not tell if anyone got in the vehicle but did see the vehicle leave the residence at a high rate of speed." Based upon this scant amount of information, Wilson communicated with waiting deputies to stop the sedan.
Rather than address the conflicting testimony of Deputy Collins and Wilson, the trial court relied upon the fact that law enforcement had received an anonymous tip that placed Evans in the area, he had recently eluded the deputies, had outstanding arrest warrants, and a car was seen leaving the house at a high rate of speed.[1] The majority believes this sufficient to justify the stop of the vehicle. I disagree.
The trial court relied upon State v. Lopez, 923 So.2d 584 (Fla. 5th DCA 2006), to justify the stop of the vehicle. When reviewing a trial court's ruling on a motion to suppress, this court employs a mixed standard of review. The trial court's findings *135 of historical fact are accorded a presumption of correctness, unless they are not supported by competent, substantial evidence. Connor v. State, 803 So.2d 598, 608 (Fla.2001); McMaster v. State, 780 So.2d 1026, 1028 (Fla. 5th DCA 2001). However, the trial court's application of the law or its ruling on issues of mixed questions of law and fact are reviewed de novo. Id. An officer's mere suspicion or hunch that criminal activity is afoot is insufficient to uphold an investigatory stop. Lopez, 923 So.2d at 584. Rather, the police must have a well-founded suspicion that the person committed, was committing, or was about to commit a crime. Id. at 586. This suspicion must be rooted in the factual circumstances observed by the officer and interpreted in light of the officer's knowledge. Id. at 587; McMaster, 780 So.2d at 1029. It is the circumstances, viewed in their totality, that determine whether an investigatory stop passes constitutional muster. Lopez, 923 So.2d at 587.
In Lopez, an officer received an email from Lopez's probation officer that Lopez was violating his community control by driving. The probation officer gave the officer Lopez's address and advised that Lopez was a painter who left for work early in the morning. After verifying that Lopez's license was suspended and obtaining Lopez's photograph, the officer drove by the residence and observed a Jeep, with a ladder attached, in the driveway. The Jeep was registered to a woman with the same address as Lopez. Although the officer did not see who got into the Jeep, he observed it leave the house and stop at an intersection with the turn signal activated. Despite having the opportunity to turn, the Jeep remained at the intersection, allowing the officer to drive by and observe a man driving. Upon seeing the police car, the driver of the Jeep abruptly turned and sped back to Lopez's address. The Jeep was subsequently stopped and Lopez was confirmed to be the driver.
The trial court granted Lopez's motion to suppress, finding that the officer did not have a reasonable suspicion to stop the Jeep because it was registered to a woman, he did not see who was driving, and no traffic laws were violated. This court reversed, finding that the totality of the circumstances provided reasonable suspicion that Lopez was driving the Jeep, thereby violating his community control.
In the case at bar, the house was not Evans' known or listed address. Evans was not seen at the house prior to the car pulling up and stopping. There were no distinguishing characteristics of the car that associated it with Evans, unlike Lopez where the truck was consistent with Lopez's occupation as a painter. Neither Evans, nor anyone matching his description, was seen entering or exiting the car. In fact, the deputies had no information regarding the driver or passengers in the car. The lack of any information corroborating the anonymous tip, facts linking Evans with the house or the car, or observations of criminal activity distinguishes this case from Lopez.
At best, the deputies stopped the car based on an unsubstantiated hunch, similar to the officers in Tinson v. State, 650 So.2d 189 (Fla. 2d DCA 1995). Accordingly, I would reverse.
NOTES
[1] Evans was arrested later that evening at the residence in question.
[2] After the stop, Appellant told deputies that he had a gun. The use of this statement and the retrieval of the gun based on the admission is not an issue on appeal.
[1] No traffic violation was asserted as a basis for the stop.