884 So.2d 271 (2004)
John M. PAFF, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-2950.
District Court of Appeal of Florida, Second District.
August 13, 2004.
Rehearing Denied September 16, 2004.
*272 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Chief Judge.
John M. Paff appeals a judgment withholding adjudication for possession of cocaine. Mr. Paff entered an open plea of guilty to the charge, reserving the right to appeal the denial of his dispositive motion to suppress the cocaine. We reverse the judgment because law enforcement officers did not have a reasonable suspicion to stop Mr. Paff's vehicle. Even if Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), applies to the stop of a vehicle, Mr. Paff was not violating any traffic regulation and his vehicle was not otherwise engaged in flight when he was seized and his car searched.
Around midnight on August 24, 2002, a deputy sheriff on patrol in Sarasota pulled into a gas station and noticed two cars parked in a shadowy area of the driveway. The cars were stopped, each facing an opposite direction with the driver's side windows aligned. This was not a designated parking area, and the cars were obstructing traffic flow through the gas station, which apparently was open. As the deputy sheriff pulled into the station, he believed that the occupants of the cars noticed his vehicle. Both cars then left the gas station. Although the deputy sheriff described the two cars as leaving the gas station "real quick," he admitted that neither driver committed any traffic infraction when leaving the gas station. Because the deputy knew that drug deals commonly occurred in this parking lot, he believed that the occupants of the vehicles had participated in a drug transaction. Thus, he immediately performed a Terry[1] stop of Mr. Paff's vehicle and detained it to await the arrival of a police dog to sniff the vehicle for drugs. After a considerable period, the canine unit arrived and the dog alerted to an area within the vehicle. The deputy searched the interior and discovered two rocks of crack cocaine, which Mr. Paff was charged with possessing.
Mr. Paff filed a motion to suppress the cocaine, asserting that the deputy sheriff lacked reasonable suspicion to stop his vehicle. See § 901.151(2), Fla. Stat. (2002); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The circuit court denied the motion, based primarily upon the State's argument that Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570, applied to this scenario and supported a finding that the deputy sheriff had a reasonable suspicion of criminal activity sufficient to permit an investigatory stop of Mr. Paff's vehicle.
*273 In Wardlow, officers patrolling a "high crime area" observed Wardlow, who upon seeing them, turned and fled, running through a gangway, an alley, and then onto the street. 528 U.S. at 121-22, 120 S.Ct. 673. In holding that the officers had a reasonable suspicion to stop Wardlow based upon his "unprovoked flight" in the "high crime area," the United States Supreme Court noted that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Id. at 124, 120 S.Ct. 673. The Supreme Court explained, "Headlong flightwherever it occursis the consummate act of evasion," and "[f]light, by its very nature, is not `going about one's business.'" Id. at 124, 125, 120 S.Ct. 673.
As this court previously noted, prior to the Supreme Court's opinion in Wardlow, Florida courts generally held that a person's elusive behavior upon spotting a police officer in a high-crime area did not provide an officer with reasonable suspicion that the person had committed, was committing, or was about to commit a crime. See Copeland v. State, 756 So.2d 180 (Fla. 2d DCA 2000). Wardlow thus effectively reversed Florida decisions suppressing evidence retrieved as a result of a stop of a defendant based upon that person's presence in a high-crime area and his or her flight upon seeing police.
Prior to Wardlow, this court held that the stop of a motor vehicle under circumstances similar to those presented in this case was unlawful because the circumstances did not support a reasonable suspicion of criminal activity. See Jordan v. State, 707 So.2d 338 (Fla. 2d DCA 1998) (citing McCloud v. State, 491 So.2d 1164 (Fla. 2d DCA 1986)). The State suggests that Wardlow effectively overruled this line of cases. We disagree. See McMaster v. State, 780 So.2d 1026 (Fla. 5th DCA 2001).
Flight on foot is distinctly different than flight in a car. When "headlong flight" occurs on foot, the defendant's intent to elude an officer may be clear, even though no law is broken. When "flight" occurs in a vehicle, the vehicle often conceals the emotions of its occupants and it is more difficult to determine that such a defendant is demonstrating "nervous, evasive behavior," or is intending to engage in "headlong" flight. Wardlow, 528 U.S. at 124, 120 S.Ct. 673. A car that obeys all traffic regulations when leaving a location when a police car arrives would seem to be the motor vehicle equivalent of a person who simply walks away from an officer on foot. Such a pedestrian does not invoke the rule of Wardlow. See, e.g., Lee v. State, 868 So.2d 577 (Fla. 4th DCA 2004) (refusing to apply Wardlow to justify stop when defendant was part of crowd that merely "dispersed" upon approach of law enforcement and defendant was simply walking quickly).[2]
In this case, Mr. Paff simply drove away from the gas station in a manner and at a rate of speed that did not violate any traffic laws. The officer did not observe any transaction or discussion between the occupants of the two cars nor did he see Mr. Paff acting nervously. The officer did not testify that Mr. Paff was driving evasively. *274 He stopped Mr. Paff's car as soon as it left the station and did not follow the car for a few blocks to observe the types of conduct that officers sometimes describe as evasive. This cannot be considered "headlong flight" from the sheriff's deputy, even if it was triggered by the sight of the patrol car. Particularly in light of the officer's testimony that the cars were blocking the through-way of the gas station when the deputy sheriff pulled in behind them, Mr. Paff's behavior was fully consistent with "going about one's business" when approached by an officer. See Wardlow, 528 U.S. at 125, 120 S.Ct. 673; Lee, 868 So.2d 577. Under these circumstances, the deputy sheriff had only a mere hunch, and not a reasonable suspicion, that Mr. Paff had committed, was committing, or was about to commit a criminal offense. See Jordan, 707 So.2d 338. We therefore reverse Mr. Paff's judgment and sentence and remand with instructions that the circuit court grant the motion to suppress.
Reversed and remanded.
SILBERMAN, J., concurs.
CANADY, J., dissents with opinion.
CANADY, Judge, Dissenting.
Because I disagree with the majority's conclusion that the investigative stop of Mr. Paff's vehicle was not justified by a reasonable suspicion of criminal activity, I dissent.
"[U]nprovoked flight upon noticing the police" is a factor that can be utilized in establishing a reasonable suspicion because it demonstrates "nervous, evasive behavior." Wardlow, 528 U.S. at 124 120 S.Ct. 673. Such behavior can be exhibited by the driver of a vehicle even when the driver violates no traffic regulation. See United States v. Brignoni-Ponce, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) ("The [vehicle] driver's behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion."); United States v. Juvenile TK, 134 F.3d 899, 903 (8th Cir. 1998) ("[P]olice are entitled to be suspicious of vehicular movement that, while not illegal, may be reasonably perceived as evasive."); see also United States v. Arvizu, 534 U.S. 266, 275-76, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (holding that conduct of vehicle driver was relevant to reasonable suspicion determination and stating that "a driver's slowing down, stiffening of posture, and failure to acknowledge a sighted law enforcement officer" would be "quite unusual" in certain circumstances).
In the instant case, the officer who effected the stop of Mr. Paff's vehicle testified that, when he approached the service station where Mr. Paff's vehicle was located, "[a]s soon as" Mr. Paff saw the officer he "took off"that is, Mr. Paff "drove off real quick." The officer's testimony establishes that Mr. Paff's reaction to the officer's appearance at the scene was to make a hasty departure. Considering such a hasty departure triggered by the appearance of the police as an instance of "nervous, evasive behavior" is quite reasonable. Wardlow, 528 U.S. at 124, 120 S.Ct. 673.
In making his hasty departure, Mr. Paff was not simply "ignor[ing] the police and go[ing] about his business." Id. at 125, 120 S.Ct. 673. As the court made clear in Wardlow, flight from the police is the antithesis of ignoring the police and going about one's business. Id. Indeed, Mr. Paff apparently instantaneously stopped going about whatever business he may have been engaged in with the driver of the vehicle which was "parked side by side, very close, window to window" with Mr. Paff's vehicle.
This conduct of Mr. Paff, although "not necessarily indicative of wrongdoing," was "certainly suggestive of such." Id. at 124, 120 S.Ct. 673. Mr. Paff's flight, without *275 more, would not be sufficient to establish the basis for a reasonable suspicion of criminal activity. But in making the necessary "commonsense judgments and inferences about human behavior" that is the basis for a determination that reasonable suspicion exists the detaining officer was entitled to consider Mr. Paff's hasty departure as a relevant factor. Id. at 125, 120 S.Ct. 673.
In making a determination regarding whether reasonable suspicion exists, "the totality of the circumstancesthe whole picturemust be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Arvizu, 534 U.S. at 273-74, 122 S.Ct. 744 (quoting Cortez, 449 U.S. at 418, 101 S.Ct. 690).
The "cumulative information" available to the detaining officer here supported the officer's conclusion that criminal activity was afoot and that further investigation was warranted. In addition to the hasty departure of Mr. Paff and the driver of the other car, additional factors in the totality of circumstances pointed toward the conclusion that criminal activity was afoot. The area was a high crime area. Indeed, the specific location of Mr. Paff's vehicle was a location at which it was common for drug transactions to take place. The position of the two vehicles, parked in close proximitywith the drivers' windows lined upis also a factor relevant to the reasonable-suspicion determination. This combination of circumstances established "something more than an `inchoate and unparticularized suspicion or "hunch."'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Although each of the relevant circumstances would individually be insufficient to justify an investigative stop, taken together they support the conclusion that the detaining officer had a reasonable suspicion that criminal activity was afoot.
It is true that there was a possible innocent explanation for Mr. Paff's conduct. "A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." Arvizu, 534 U.S. at 278, 122 S.Ct. 744. Accordingly, I disagree with the majority's view that the officer's testimony concerning the location of the two cars necessarily negates the conclusion that Mr. Paff's behavior was evasive. The detaining officer testified that someone parked in the area where Mr. Paff was parked "would ... be obstructing traffic that's coming and going in and out of the parking lot." This testimony was an elaboration on the officer's testimony that Paff was parked in an area that was a "flow-way" through the parking lot and not a "normal place for people to park at all." None of the testimony establishes that the entire flow-way was in fact blocked by the two cars and that they necessarily were required to move in order to make way for the approaching vehicle driven by the officer. It is possible to infer such an explanation for Mr. Paff's departure, but such an inference is not required by the testimony concerning the pertinent circumstances. Moreover, the circumstance of the location of the vehicles in no way provides a necessarily sufficient explanation for the haste of Mr. Paff's departure. In sum, the "possibility of innocent conduct" by Mr. Paff does not mean that the detaining officer's assessment *276 of the totality of the circumstances and his resulting suspicion concerning Mr. Paff's conductwas unwarranted. Id.
I also differ with the majority's conclusion that Mr. Paff's departure cannot be considered "headlong flight." Headlong means simply "undertaken quickly and suddenly." Random House Unabridged Dictionary 881 (2d ed.1993). Headlong is synonymous with "hasty." Id. The detaining officer's testimony that Mr. Paff "took off" is sufficient to support the conclusion that he was engaged in headlong flight.
On the basis of the foregoing analysis, I would uphold the trial court's determination that the investigative stop of Mr. Paff was based on reasonable suspicion and affirm the judgment withholding adjudication for possession of cocaine.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[2] In F.E.A. v. State, 804 So.2d 528, 530 (Fla. 1st DCA 2002), the First District stated its "belief" that Jordan "may have been overruled by Wardlow," but the First District specifically declined to reach the issue. In F.E.A., officers observed the defendant run, jump into a car, and "speed away." F.E.A., 804 So.2d at 529. This behavior is significantly more consistent with "headlong flight" than the behavior described in Jordan or in the present case. In cases in which the only "flight" alleged is the defendant's driving away in a vehicle in a manner that does not violate the traffic laws, we conclude Jordan applies and has not been overruled by Wardlow. Accord McMaster, 780 So.2d 1026.