884 So.2d 1121 (2004)
Cornell CUNNINGHAM, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-5282.
District Court of Appeal of Florida, Second District.
October 22, 2004.
James Marion Moorman, Public Defender, and Brad Permar, Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Cornell Cunningham appeals from an order placing him on drug offender probation following the denial of his dispositive motion to suppress, contending that the court erred in applying the case of Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), as rationale for the denial. We hold, as a matter of law, that Wardlow does not justify the stop of the defendant's car and reverse.
At 4:45 a.m. on the date of Mr. Cunningham's arrest, a sheriff's deputy patrolling a residential area of Safety Harbor noticed a *1122 small group of people standing outside a parked car with illuminated brake lights. Cars were often parked along the roadway in this well populated area, but seldom were people out on the street at that hour. Although the neighborhood was not known to have a high crime rate, a number of burglaries had recently occurred there. Because he wanted to see what was happening, the deputy turned down the street and, from a distance of seventy-five to a hundred yards, saw a person jump into the car and accelerate quickly. The car rocked to the left as it made what the deputy described as an aggressive turn. Significantly, the deputy did not know whether the driver or passenger had seen him approach in his marked car. Nevertheless, all of the circumstances aroused the deputy's suspicions, so he activated his blue lights and stopped the car. After the stop, Mr. Cunningham, the passenger, was searched and arrested for possession of cocaine.
Mr. Cunningham filed a motion to suppress, arguing that the deputy did not have a well-founded suspicion of criminal activity that would justify the investigatory stop of the car in which he was riding. After a hearing, the circuit court entered a detailed order denying the motion, finding that the stop was legal because the car in which Mr. Cunningham was a passenger engaged in headlong flight when the deputy approached. The circuit court recognized that prior to the United States Supreme Court's ruling in Wardlow, 528 U.S. at 119, 120 S.Ct. 673, Florida case law would have dictated that the defendant's motion be granted. We hold that the facts of this case do not support application of Wardlow.
In Wardlow, a four-car caravan of police officers converged on an area known for narcotics trafficking with the expectation that they would find a crowd of people, including dealer lookouts. An officer in the last car observed Wardlow standing on the street, holding an opaque bag. When Wardlow noticed the officers he immediately fled. They pursued him through a gangway and alley and finally stopped him on the street. During a patdown, an officer felt what turned out to be a loaded .38 handgun in Wardlow's bag and arrested him. He was ultimately convicted of unlawful use of a weapon by a felon. 528 U.S. at 121-22, 120 S.Ct. 673.
The hallmarks of the Wardlow decision are the high-crime locale and the suspect's subsequent "unprovoked flight upon noticing the police." Id. at 124, 120 S.Ct. 673. Thus, those two factors, if present, add to the totality of circumstances that might arouse an officer's suspicion that a crime had been or was about to be committed. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Kibbee, 513 So.2d 256 (Fla. 2d DCA 1987). As to the first factor, we agree with the circuit court and the State that the location in which the deputy first observed Mr. Cunningham was technically not a high-crime area in the usual sense of being riddled with narcotics dealings and drug-related shootings, but the recent unlawful activity occurring there arguably was a pertinent factor justifying the deputy's increased suspicion.
As to the second factor, the Wardlow Court explained that "[h]eadlong flight  wherever it occurs  is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." 528 U.S. at 124, 120 S.Ct. 673. In this case, however, the facts surrounding Mr. Cunningham's departure from the scene do not rise to the level of "headlong flight." There was no evidence that Mr. Cunningham or the driver actually observed the police before the car left the area, which in our view is a critical *1123 factor. For example, in United States v. Gordon, 231 F.3d 750, 756 (11th Cir.2000), the Eleventh Circuit emphasized the district court's finding that the defendant made eye contact with the police and applied Wardlow as follows:
The district court specifically found that Gordon's eyes "lit up" and he moved quickly toward the Defendants' car when the first marked police vehicle approached. There may be perfectly innocent reasons in certain circumstances for someone to walk or even run away from a location upon the approach of a law enforcement officer. But Gordon's conduct in this case  making eye contact with the officer, thereafter moving quickly toward an adjacent car, entering that car, and then driving away in the opposite direction from the officers  coupled with the officers' knowledge of frequent unlawful activity in the neighborhood where Gordon had been standing, provided adequate grounds for this Terry stop.
Similarly, in another Eleventh Circuit case, the court also found significant the fact that the suspect saw the officers as they approached:
Franklin's flight was particularly suspicious because of its nature and its duration. He ran away at full speed as soon as he saw the officers. He did not turn and start to walk away. He did not act like he was going about his business. Instead he took off in "headlong" flight. While any kind of flight, even walking away, might support a finding of reasonable suspicion, "[h]eadlong flight  wherever it occurs  is the consummate act of evasion."
United States v. Franklin, 323 F.3d 1298, 1302 (11th Cir.2003) (citations omitted).
In this case, the deputy specifically denied knowing whether Mr. Cunningham or the driver saw the patrol car approach. The deputy testified that he was some distance away when he saw their car. Although he was in a marked vehicle, it is not clear whether the suspects could have identified it as such at 4:45 a.m., particularly as there was no evidence concerning the lighting in the area. The deputy did not turn on his blue flashing light until after the car began moving. The brake lights of the car were already illuminated when the deputy first spotted it, suggesting that the driver might have been preparing to leave even before the deputy drove toward the car. And, although the car made an "aggressive" turn, the driver did not commit any traffic infractions that would justify a stop. Thus, there is no factual basis for the legal conclusion that the defendant intentionally evaded law enforcement.
Our court recently reviewed a case somewhat similar to this, in which the defendant was the driver of a car stopped next to another car in the shadowy parking area of a gas station. As a deputy sheriff pulled into the station, both cars quickly left. Because the parking lot was known for drug deals, and because the cars were parked in a manner suggesting that an illegal transaction could be taking place, the deputy immediately stopped the defendant's car. On appeal from the denial of the defendant's motion to suppress, this court held that Wardlow did not justify the investigatory stop. In Paff v. State, 884 So.2d 271, 273 (Fla. 2d DCA 2004) (footnote omitted), we reasoned as follows:
Flight on foot is distinctly different than flight in a car. When "headlong flight" occurs on foot, the defendant's intent to elude an officer may be clear, even though no law is broken. When "flight" occurs in a vehicle, the vehicle often conceals the emotions of its occupants and it is more difficult to determine that such a defendant is demonstrating "nervous, *1124 evasive behavior," or is intending to engage in "headlong" flight. Wardlow, 528 U.S. at 124, 120 S.Ct. at 673. A car that obeys all traffic regulations when leaving a location when a police car arrives would seem to be the motor vehicle equivalent of a person who simply walks away from an officer on foot. Such a person does not invoke the rule of Wardlow. See, e.g., Lee v. State, 868 So.2d 577 (Fla. 4th DCA 2004) (refusing to apply Wardlow to justify stop when defendant was part of crowd that merely "dispersed" upon approach of law enforcement and defendant was simply walking quickly).
As the circuit court recognized in this case, prior to the Wardlow decision, controlling case law in this district would mandate a conclusion that this stop was illegal. For example, in Jordan v. State, 707 So.2d 338 (Fla. 2d DCA 1998), the defendant was parked, near midnight, in a dark area near a closed business that had been burglarized in the past. He pulled his truck away as the deputy approached. Similarly, in Hewlett v. State, 599 So.2d 757 (Fla. 2d DCA 1992), three men, who were parked next to the property of a known drug dealer but who were themselves unknown to the police, jumped in their truck and drove away at a fast but lawful rate of speed as an officer approached on routine patrol. In both cases, this court held that the totality of the circumstances did not give rise to a founded suspicion justifying a Terry stop. Now, the exigencies described in Wardlow  a suspect's precipitous flight after noticing the presence of law enforcement personnel in a high-crime area  can be considered among the totality of circumstances that might give rise to an officer's founded suspicion of criminal activity. But when the alleged flight consists merely of the "defendant's driving away in a vehicle in a manner that does not violate the traffic laws, ... Jordan applies and has not been overruled by Wardlow." Paff, 884 So.2d at 273, n. 2.
Because the circuit court erred in applying Wardlow to the facts of this case, we reverse the denial of the motion to suppress and remand for discharge of the defendant.
Reversed and remanded.
STRINGER and VILLANTI, JJ., concur.