948 So.2d 945 (2007)
STATE of Florida, Appellant,
v.
Michael E. WYNN, Appellee.
No. 5D06-2070.
District Court of Appeal of Florida, Fifth District.
February 16, 2007.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeffrey R. Casey, Assistant Attorney General, Daytona Beach, for Appellant.
James S. Purdy, Public Defender, and Jane C. Almy-Loewinger, Assistant Public Defender, Daytona Beach, for Appellee.
LAWSON, J.
The State of Florida appeals from a non-final order suppressing cocaine seized from Michael Wynn during an investigative police stop.[1] Finding that the stop was justified by law enforcement's objectively reasonable suspicion of criminal activity, we reverse the suppression order and remand for further proceedings.
The Fourth Amendment to the United States Constitution prohibits police officers from conducting unreasonable searches and seizures.[2] The seizure of a person arises only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen. Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). For a brief, investigatory stop to be legal, the officer must have an objectively reasonable suspicion of criminal activity, based upon specific and articulable facts. Id. at 21, 88 S.Ct. 1868. In other words, the officer must be able to articulate more than an "inchoate and unparticularized *947 suspicion or `hunch'" that the person has committed, is committing, or is about to commit a crime. Id. at 27, 88 S.Ct. 1868.
In Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the United States Supreme Court held that an individual's unprovoked flight from a high-crime area upon the approach of a police vehicle gave rise to an objectively reasonable suspicion of criminal activity, and therefore justified a Terry stop of the individual. We find Wardlow to be factually indistinguishable, and controlling.
In this case, Daytona Beach Police Officer Michael Stens was dressed in full patrol uniform and walking around the parking lot of an establishment known as a "hotspot" for narcotics and other criminal activity. Wynn was legally parked in the lot, and sitting inside his pick-up truck. When Stens and Wynn made eye-contact, Wynn immediately shifted his truck into gear and "fled" from the lot at a notably high rate of speed, with "dirt kicking up" and tires "squealing." The trial court found Officer Stens' testimony to be credible, and specifically found that Wynn "fled" from the parking lot when he saw officer Stens.
Officer Stens radioed his observations to Officer Scott Goss, who was nearby on patrol in his police cruiser. Officer Goss observed Wynn steer into the parking lot of an apartment complex, park, turn off the truck's lights and crouch down onto the truck's floorboard. Officer Goss then pulled his cruiser behind Wynn's truck to conduct a Terry stop. When Goss ordered Wynn out of his truck, Goss saw a substance that appeared to be cocaine on the seat of the truck, in plain view. The substance tested positive for cocaine, and Goss was ultimately arrested for possession of the controlled substance. Upon his arrest, additional cocaine was found in Wynn's pocket, along with $176.00 cash, in denominations consistent with "street level narcotics sales."
Comparing these facts to those in Wardlow, we find that Wynn's unprovoked flight from a parking lot known for narcotics and other criminal activity, upon seeing officer Stens, raised a reasonable suspicion of criminal activity sufficient to justify the Terry stop of Wynn. See Wardlow, 528 U.S. at 124, 120 S.Ct. 673. Of course, Officer Goss' additional observation of Wynn crouching down onto the truck's floorboard was also objectively suspicious under the circumstances. Given that the stop was legally justified, there is no basis for the suppression order. Officer Goss was conducting a legal stop when he saw what appeared to be cocaine in plain view. The sight of cocaine in plain view justified seizure of the cocaine, Pagan v. State, 830 So.2d 792, 808 (Fla.2002), and the arrest of Wynn. Beard v. State, 548 So.2d 675 (Fla. 5th DCA 1989). Any additional search of Wynn, incident to his arrest, was also legal. See United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).
For these reasons, we reverse the order on appeal, and remand the case for further proceedings. In doing so, we note that the prosecutor below correctly argued that given the totality of the circumstances, the officers' suspicion that Wynn was involved in criminal activity was objectively reasonable based upon the facts articulated. However, at the suppression hearing, the State never cited to Wardlow, or any other case directly on point. Because the State made the correct legal argument, we find that the issue was properly preserved for appeal despite the failure to cite cases on point. See State v. Casey, 908 So.2d 600, 601 (Fla. 2d DCA 2005). However, it would have been helpful if the State had presented the trial judge with controlling case law. If that had been done, we are *948 confident that the trial judge would have reached the same conclusion that we have reached on appeal.
REVERSED and REMANDED.
ORFINGER and EVANDER, JJ., concur.
NOTES
[1] We have jurisdiction pursuant to article V, section 4(b)(1) of the Florida Constitution and Florida Rule of Appellate Procedure 9.140(c)(1)(B).
[2] Article 1, section 12 of the Florida Constitution contains the same prohibition. However, section 12 also contains a "conformity clause," which requires Florida courts to resolve search and seizure issues in accordance with the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Holland v. State, 696 So.2d 757 (Fla.1997).