973 So.2d 682 (2008)
Lance L. DOE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1307.
District Court of Appeal of Florida, Fourth District.
February 13, 2008.
*683 Carey Haughwout, Public Defender, and Ellen Griffin, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION TO CLARIFY
STONE, J.
We grant Doe's motion to clarify, withdraw our opinion of January 2, 2008, and substitute the following:
Doe appeals following a nolo contendere plea in which he reserved his right to appeal the denial of a motion to suppress. The sole issue is whether the arresting officer had an objectively reasonable suspicion that a crime had occurred, or was about to occur, when he stopped Doe's vehicle. We reverse.
At the hearing on the motion, Officer Martin testified that he and another officer were conducting a foot patrol of the Boardwalk apartment complex when his attention was drawn to a vehicle because it was parked in an area that did not have marked spaces. As the officers approached, the car began to drive away.
Martin says that he stopped the vehicle because it was a high crime area, and he was under the impression that a city ordinance required parking in a designated parking spot. Martin did not cite Doe for any city ordinance violation, and the record reflects that there was no city ordinance that might be applicable.
To stop and detain a person for investigation, an officer must have a reasonable Suspicion that the person has committed, is committing, or is about to commit a crime. State v. Gonzalez, 840 So.2d 401, 403 (Fla. 4th DCA 2003). Whether an officer's suspicion is reasonable is determined by the totality of the circumstances. Id.
The state contends that even if there was not a valid ordinance violation basis for the stop, the denial of the motion to suppress should be affirmed because the stop was justified by a reasonable suspicion of criminal activity where, upon the officers' approach, the car drove away from an area known for drug deals. It is undisputed that there was nothing out of the ordinary in the method and manner of the vehicle pulling away before it was stopped at gunpoint.
In Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), the United States Supreme Court held that an individual's unprovoked flight from a high-crime area upon the approach of a police vehicle gave rise to an objectively reasonable suspicion of criminal activity and, therefore, justified a Terry[1] stop of the individual. This case, however, is distinguishable. In Wardlow, police officers patrolling a high crime neighborhood known for drug trafficking observed the defendant standing next to a building and holding an opaque bag. When the defendant "looked in the direction of the officers," he turned and ran in the other direction.
In Paff v. State, 884 So.2d 271 (Fla. 2d DCA 2004), a deputy pulled into a gas station and noticed two cars parked in a shadowy area, each facing an opposite direction, with the driver's side windows *684 aligned. This was not a designated parking area, and the cars were obstructing traffic flow through the open gas station. Both cars then left the gas station. Drug deals commonly occurred in this parking lot. He immediately performed a Terry stop of Mr. Paff's vehicle and detained it to await the arrival of a police dog.
The circuit court denied Paff's motion to suppress on the authority of Wardlow.
The Second District, however, recognized that:
Flight on foot is distinctly different than flight in a car. When "headlong flight" occurs on foot, the defendant's intent to elude an officer may be clear, even though no law is [known to be] broken. When "flight" occurs in a vehicle, the vehicle often conceals the emotions of its occupants and it is more difficult to determine that such a defendant is demonstrating "nervous, evasive behavior," or is intending to engage in "headlong" flight. Wardlow, 528 U.S. at 124, 120 S.Ct. 673, 145 L.Ed.2d 570. A car that obeys all traffic regulations when leaving a location when a police car arrives would seem to be the motor vehicle equivalent of a person who simply walks away from an officer on foot. Such a pedestrian does not invoke the rule of Wardlow. See, e.g., Lee v. State, 868 So.2d 577 (Fla. 4th DCA 2004) (refusing to apply Wardlow to justify a stop when defendant was part of a crowd that merely "dispersed" upon approach of law enforcement and defendant was simply walking quickly).
884 So.2d at 273.
Here, as in Paff, the vehicle simply drove away. As in Paff, there was nothing otherwise suspicious in Doe's behavior. As the court recognized in Paff, under such circumstances, the officer, is making the stop based on a "mere hunch, and not a reasonable suspicion." Id. at 274; see also Cunningham v. State, 884 So.2d 1121 (Fla. 2d DCA 2004).
We have considered State v. Wynn, 948 So.2d 945 (Fla. 5th DCA 2007), and deem it distinguishable. In Wynn, a uniformed officer was on foot patrolling a parking lot known for drug activity and observed Wynn crouching down in his truck. They then made "eye contact," whereupon Wynn took off at a "high rate of speed," with dirt "kicking up" and tires "squealing". Id. at 947. We deem these distinctions significant, as the facts in Wynn evidence flight, whereas here, as in Paff, the mere act of driving away, even with knowledge of the officer's approach, is no more likely to signify flight than walking away.
Therefore, we conclude that Doe's conduct did not raise reasonable suspicion of criminal activity sufficient to justify a Terry stop. The judgment is reversed with directions to discharge Doe.
STEVENSON and HAZOURI, JJ., concur.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).