MONACO, J.
The sole issue for our consideration in this appeal that was commenced by the State is whether the trial court erred in granting the motion of the appellee, Derrick Allen, to suppress certain evidence seized during an investigatory stop. Because we conclude that the stop met the requirements of the constitution and the applicable statutes, we reverse the suppression order and remand for further proceedings.
The general legal propositions surrounding the lawfulness of an investigatory stop are hardly cutting edge. Although the settled law in this area has been around for quite some time, its application to the facts of the individual case often proves to be perplexing. Our analysis must, therefore, begin with the broad picture.
Police officers are prohibited by the Fourth Amendment to the United States Constitution from conducting unreasonable searches and seizures. See also Art. I, § 12, Fla. Const. In order to justify an investigatory stop that conforms to the Fourth Amendment, a law enforcement officer must have a reasonable suspicion that the person detained has committed, is committing, or is about to commit a crime. See § 901.151(2), Fla. Stat. (2007). See also State v. Lopez, 923 So.2d 584 (Fla. 5th DCA 2006); McMaster v. State, 780 So.2d 1026 (Fla. 5th DCA 2001). The officer is required to have a well-founded and articulable suspicion of criminal activity, and not merely an “inchoate and unpartic-ularized suspicion or hunch.” Lopez, 923 So.2d at 586-587. See also State v. Wynn, 948 So.2d 945 (Fla. 5th DCA 2007). Moreover, this reasonable suspicion requires a factual foundation based on the observations of and information in the possession of the law enforcement officer. See McMaster; Bailey v. State, 717 So.2d 1096 (Fla. 5th DCA 1998). A court must then determine the legitimacy of the stop in light of the totality of circumstances surrounding it. See Doe v. State, 973 So.2d 682 (Fla. 4th DCA 2008); McMaster; State v. Gandy, 766 So.2d 1234 (Fla. 1st DCA 2000).
In the present case the police during a controlled buy received information from a known confidential informant who had a history of providing reliable information. The informant indicated that he had just purchased some crack cocaine in a parking lot in the Paramore area of the Orange Blossom Trail in Orlando. The description given by the informant of the person who sold him the cocaine was:
Black male, dark skin, approximately 6'2", weighing 200 pounds, wearing a dark-colored shirt, with facial hair.
The officer also related that the informant told him of a second person who was also present at the time of the transaction and provided a description of that individual as well. The officers testified that the parking lot was in a high crime area where the officers had made numerous drug arrests, and had received countless citizen complaints.
Two officers in one unmarked car, and a third officer in another unmarked vehicle were sent to investigate. The two officers in the first car entered the parking lot in front of a meat market where they were told the sale had occurred. When they exited the car-in full uniform, they saw three individuals in the vicinity, two of whom were standing in the parking lot and allegedly matched the verbal description given to them by the informant. When the individuals in the parking lot, one of whom was the appellee, saw the uniformed officers, they began to walk away hurriedly. As Mr. Allen and the other individual *1194 were walking away, the individual with Mr. Allen was observed throwing an item that turned out to be crack cocaine under a parked truck. The police then yelled, “Police, stop.”
The two-officer team caught up with Mr. Allen and asked what he was holding in his tightly clinched hand. When Mr. Allen opened his hand, the officers saw that he was carrying several pieces of crack cocaine.
The confidential informant eventually reduced his statement to writing. The officers involved had not seen the written description prepared by the informant pri- or to the search, but were acting solely on the more general verbal description given by the informant which approximated the appearance of Mr. Allen and the other person arrested. That is to say, the officers did not see the written description until after the arrest of the appellee. As it turned out, however, neither Mr. Allen, nor his companion were the person who actually sold the contraband to the confidential informant. In fact, the informant later identified a third person as the seller. Although the more specific written description given by the informant of the clothing worn by the seller did not match the clothing worn by Mr. Allen or his companion, the verbal physical description of the perpetrator in fact matched both Mr. Allen and the other gentleman in the parking lot. On these facts the trial court held that the search was unconstitutional and suppressed the cocaine seized from Mr. Allen, apparently because the subsequently given written description of the clothing worn by the persons involved with the informant did not match up with the clothing worn by Mr. Allen and his companion on the night in question.
A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and a reviewing court must interpret the evidence and reasonable inferences and deductions derived from it in a manner most favorable to sustaining a trial court’s ruling. See Doorbal v. State, 837 So.2d 940, 952 (Fla.), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003); Pagan v. State, 830 So.2d 792 (Fla.2002), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003); San Martin v. State, 717 So.2d 462, 468 (Fla.1998), cert. denied, 526 U.S. 1071, 119 S.Ct. 1468, 143 L.Ed.2d 553 (1999); Davis v. State, 922 So.2d 438, 443 (Fla. 5th DCA 2006). While the standard of review to be applied to factual findings of the court is whether competent, substantial evidence supports the findings, the trial court’s application of the law to the facts is reviewed de novo. See Utu v. State, 929 So.2d 718 (Fla. 5th DCA 2006); Houston v. State, 925 So.2d 404 (Fla. 5th DCA), review denied, 935 So.2d 1220 (Fla.2006); Dewberry v. State, 905 So.2d 963 (Fla. 5th DCA 2005); Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002); State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001); McMaster, 780 So.2d at 1027; Hines v. State, 737 So.2d 1182 (Fla. 1st DCA 1999); see also State v. Irizarry, 948 So.2d 39 (Fla. 5th DCA 2006).
There are innumerable facts and observations that may be evaluated by police officers in determining whether a suspect has committed, is committing, or is about to commit a crime. Among these are the existence of reliable information concerning the crime; the location of the purported crime; the physical appearance and behavior of any suspect, including flight; and anything incongruous or unusual in the situation as interpreted in light of the officer’s knowledge and experience. Cf., Mitchell v. State, 955 So.2d 640 (Fla. 4th DCA 2007); Hernandez v. State, 784 So.2d 1124, 1126 (Fla. 3d DCA 1999), review denied, 763 So.2d 1043 (Fla.2000).
*1195 Here, the officers had a verbal tip from a reliable source describing a person who had just sold him crack cocaine; both persons seen in the parking lot generally-matched the description given to them; both individuals began hurriedly walking away when they saw the officers approaching; [1] one suspect threw something under a nearby truck; and Mr. Allen had his hand tightly clutched as he was stopped. The trial court granted the motion to suppress not because it did not believe the police officers had the verbal description, but because the subsequently prepared written description did not match Mr. Allen. Under these circumstances, the written description is not relevant to the legal determination before us. For constitutional purposes we can only evaluate the information in the possession of the officers at the time of the stop. Given the totality of these circumstances, and the application of the law to these facts, it seems clear that the investigatory stop was valid because the officers had a reasonable and founded suspicion to believe that Mr. Allen was involved in criminal activity, particularly in view of the verbal description given to them by the informant. We therefore reverse the suppression order and remand for further proceedings.
REVERSED and REMANDED.
EVANDER and COHEN, JJ., concur.

. Although Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), indicates that an individual’s unprovoked flight from a high-crime area upon approach of the police would give rise to a reasonable suspicion of criminal activity sufficient to support an investigatory stop, we need not be concerned here regarding this principle to the present case. Although it is uncertain that "hurriedly” walking away matches the Ward-low requirement for unprovoked flight, it is clear that the behavior of the appellee and his companion upon the approach of the uniformed officers is one of the factors to be considered in summing up the totality of circumstances, regardless of whether his actions constituted headlong flight.