868 So.2d 577 (2004)
Damon LEE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-4065, 4D02-4277.
District Court of Appeal of Florida, Fourth District.
February 18, 2004.
*578 Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Claudine M. LaFrance, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
Damon Lee appeals from his convictions in circuit court case numbers 02-3550 and 99-21195, which were consolidated on appeal. Lee was charged by information with one count of possession of cocaine in case number 02-3550 and as a result of these charges he was also charged with a violation of probation in case number 99-21195. Lee filed a motion to suppress in both cases. Following the denial of his motions to suppress, Lee pled nolo contendere in each case reserving his right to appeal the denial of his motions to suppress which are dispositive of the charges. We reverse.
At the hearing on the motions to suppress, the only witness who testified was Broward County Sheriff's Detective Aldwaldo Tianga. Tianga testified that on March 1, 2002, at approximately 9:00 p.m., he was on duty and responded to a dispatch based upon an anonymous tip of the sale of narcotics at the 5600 block of S.W. 27th Street in Broward County, Florida. In the past Tianga had received several complaints about that particular street corner concerning illegal drug activity and in fact had made fifteen to twenty drug arrests at that corner. The anonymous caller said that there was a "black male or several black males ... loitering on the street corner, selling narcotics." Tianga did not remember the call conveying any other information such as clothing, height of suspects, etc. He responded to the corner in "maybe a minute." The cruiser in which he responded was unmarked, and also occupied by Detective Sweeny. A marked cruiser driven by Deputy Anton responded just ahead of him.
*579 Upon his arrival, Tianga saw approximately five black males loitering at the corner, but had no idea whether these were the same males which were the subject of the anonymous tip. When the males loitering on the street corner observed the marked vehicle approaching, they immediately "dispersed," all in different directions.
There was an alley between two nearby duplexes. Tianga observed Lee go behind one of the duplexes. The duplex blocked the marked police vehicle's view of Lee. Tianga drove to the other end of the alley and Lee walked directly toward him. Lee was walking quickly. Detectives Tianga and Sweeny both exited their vehicle wearing shirts that indicated they were police officers. While observing Lee walk toward them, Tianga saw Lee's hand either go into his right pocket or it was already there as Lee approached. Tianga did not observe Lee flagging down cars or engaging in any drug transactions before departing the area. As Lee was walking straight towards him with his hand in his pocket, Tianga requested that Lee remove his hand from his pocket; this request, according to Tianga, was made for his safety. At that point, Lee reached the sidewalk, took his hand out of his pocket and dropped a small item to the ground. When Tianga called out to Sweeny that Lee had dropped something, Lee then fled on foot, but Sweeny apprehended him. The officers picked up the dropped object, which proved to be crack cocaine.
In denying the motions to suppress, the trial court found that under the totality of the circumstances Tianga had a reasonable suspicion that Lee was involved in criminal activity and, therefore, Tianga was legally justified in directing Lee to take his hand out of his pocket. Further, when Lee removed his hand from his pocket, the contraband fell to the ground and Tianga was justified in seizing the contraband. In arriving at this conclusion the trial court relied upon Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), McGee v. State, 818 So.2d 558 (Fla. 2d DCA 2002), and F.E.A. v. State, 804 So.2d 528 (Fla. 1st DCA 2002).
We are required to accept the trial court's determination of disputed issues of fact in a motion to suppress, as the trial court is vested with the authority to determine the credibility of the witnesses and the weight of the evidence. Although we are required to accept the trial court's determination of the historical facts leading to the search, a defendant is entitled to a de novo review of whether the application of the law to the historical facts establishes an adequate basis for the trial court's finding of reasonable suspicion or probable cause. See Curtis v. State, 748 So.2d 370 (Fla. 4th DCA 2000).
The threshold question is whether the initial encounter between Lee and Tianga was a consensual encounter or constituted an investigatory stop for which a reasonable suspicion of criminal activity is required. The state argues that the mere request by Tianga that Lee take his hand out of his pocket was insufficient to constitute a stop. We disagree. See Harrison v. State, 627 So.2d 583 (Fla. 5th DCA 1993).
In Harrison, the trial court denied a motion to suppress where an officer who had a suspect (Harrison) under surveillance, approached him for identification purposes. The officer, after asking if the suspect was "T" and getting an affirmative response, told Harrison to take his hand out of his pocket. When Harrison removed his hand from his pocket, a substance containing cocaine fell to the ground. Id. at 584. The Fifth District, in finding that the request by the officer that *580 Harrison remove his hand from his pocket was an illegal seizure, stated:
Whether the trial court correctly denied the motion to suppress depends upon whether the initial consensual encounter between the officer and Harrison evolved into a seizure before Harrison dropped the cocaine. We must hold that a seizure did occur under Hollinger v. State, 620 So.2d 1242 (Fla.1993) and State v. Anderson, 591 So.2d 611 (Fla. 1992). In Anderson the supreme court held that "[an] abandonment which is the product of an illegal stop is involuntary, and the abandoned property must be suppressed." Anderson at 613. In Hollinger, the defendant dropped cocaine as a group of officers in black masks and SWAT-team-type regalia approached him and his companions in a parking lot during a drug sweep and announced that they were from the "Orange County Sheriff's Office." The trial court suppressed the cocaine ruling that the dropping of the cocaine under those circumstances was involuntary. The supreme court found the trial court properly suppressed the cocaine since the trial court's factual finding that "a reasonable person under [these] circumstances would feel that he was not to move" was sufficiently supported by the evidence. Id. at 1243.
Other Florida district courts have consistently held that orders or even requests to remove a hand from a pocket causes a consensual encounter to become a seizure.
Harrison, 627 So.2d at 584. As in Harrison, the request by Tianga for Lee to remove his hand from his pocket amounted to a stop.
The next issue which must be addressed is whether there were sufficient facts to support a reasonable suspicion on the part of Tianga of criminal activity which would make the investigatory stop lawful.
The initial stop of Lee was based upon "a call coming over the radio of an anonymous narcotics complaint at the 5600 block of SW 27th Street," an area known for illegal drug activity. Specifically, the call was that "there were several black males loitering on the street corner, selling narcotics." However, there was no description of these males, i.e., their height, weight, type of clothing, etc. As Tianga in his unmarked vehicle and the other marked police vehicle arrived, the males on the street corner "dispersed" in different directions. Nevertheless, Tianga did not know that these were the same males about whom the anonymous informant was calling. He simply observed Lee quickly walking away from the area between the buildings and toward him. Tianga never saw Lee engage in any illegal activity.
While an anonymous tip can provide the basis for an investigatory stop, the tip must contain sufficient indicia of reliability to furnish the police with reasonable suspicion that defendant is engaged in criminal activity; such reliability is judged by (a) its specificity and (b) independent police corroboration of significant aspects of the informant's predictions. See Davis v. State, 606 So.2d 460 (Fla. 1st DCA 1992) (stop not justified based upon extremely vague anonymous tip, which was received during the evening hours, of possible drug activity on the beach, officer's observations of boats in the water, and defendant's driving his automobile off the beach upon noticing officer's patrol car); see also Solino v. State, 763 So.2d 1249 (Fla. 4th DCA 2000) (anonymous tip that bottle was thrown from the defendant's car was insufficient to justify stop); Butts v. State, 644 So.2d 605 (Fla. 1st DCA 1994) (insufficient anonymous tip consisting simply of fact that black male with grey beard, wearing *581 black cap, grey pants and blue jacket was riding bicycle, had gun in pocket, and was possibly selling drugs).
In the instant case, the anonymous tip failed to contain the requisite specificity. Equally lacking was any independent police corroboration of significant aspects of the informant's complaint that Lee was engaged in any suspicious criminal activity. Therefore, the anonymous tip was insufficient to establish reasonable suspicion.
The trial court's reliance on Wardlow, McGee, and F.E.A. to support its conclusion that there was sufficient suspicion of criminal activity to warrant the investigatory stop is misplaced. We find Wardlow, McGee, and F.E.A. distinguishable from the facts of the instant case.
In Wardlow, the defendant fled upon seeing a caravan of police vehicles converge on an area of Chicago known for heavy narcotics trafficking. When the police officers caught up with Wardlow on the street, they stopped him and conducted a protective patdown search for weapons because, in their experience, there were usually weapons in the vicinity of narcotics transactions. Discovering a hand gun, the officers arrested Wardlow. The Illinois trial court denied his motion to suppress, finding the gun was recovered during a lawful stop and frisk. Wardlow was convicted of unlawful use of a weapon by a felon. In reversing the trial court, the state appellate court found that the police officer did not have reasonable suspicion to make the stop. The Illinois Supreme Court affirmed, determining that the sudden flight in a high crime area does not create a reasonable suspicion justifying a Terry[1] stop because flight may simply be an exercise of the right to go one's way. 528 U.S. at 121-23, 120 S.Ct. 673.
The United States Supreme Court reversed the Illinois Supreme Court, noting that the officer's actions did not violate the Fourth Amendment. In reversing, the Supreme Court held that the brief encounter between a citizen and a police officer on a public street, is governed by Terry, under which an officer who has a reasonable, articulable suspicion that criminal activity is afoot may conduct a brief investigatory stop. Id. at 123, 120 S.Ct. 673. While reasonable suspicion is a less demanding standard than probable cause, there must be at least a minimal level of objective justification for the stop. Id. An individual's presence in a high crime area, standing alone, is not enough to support a reasonable, particularized suspicion of criminal activity, but a location's characteristics are relevant in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Id. at 124. The Court went on to state that the unprovoked flight by Wardlow upon the appearance of the police officer combined with it being in a high crime area was sufficient reasonable suspicion to warrant a Terry stop. Id. at 124-25, 120 S.Ct. 673.
Justice Rehnquist writing for the majority stated:
In this case, moreover, it is not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police. Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flightwherever it occursis the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.
Id. at 124, 120 S.Ct. 673 (citations omitted).
The factor missing in the instant case is that there is no evidence of flight *582 and certainly no evidence of "headlong flight." Tianga testified that upon his arrival in the area in which Lee was located, that the group "dispersed." As Lee was headed in the direction towards where Tianga had positioned his vehicle, the most that could be said was that Lee was walking quickly. Prior to Lee dispersing, Tianga observed no suspicious activity. He simply observed a group of "black men" standing on the corner in the 5600 block of S.W. 27th Street. There was no evidence presented that Lee acted "nervous" or engaged in "evasive behavior" prior to Tianga's request that Lee remove his hand from his pocket. Under the totality of the circumstances there are insufficient facts to support a reasonable suspicion that Lee was engaged in criminal activity. Without a reasonable suspicion the investigatory stop was unlawful and, therefore, the contraband obtained when Tianga requested Lee to remove his hand from his pocket was "fruit of the poisonous tree" and should have been suppressed. See Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
The trial court's reliance on McGee and F.E.A. is also misplaced. Both cases are distinguishable on their facts. In McGee, McGee was convicted of possession of cocaine and obstructing or opposing an officer without violence. The Second District, in affirming the trial court's denial of McGee's motion to suppress, found that there was reasonable suspicion that McGee was engaged in criminal activity which warranted the initial stop. See 818 So.2d at 559. At the hearing on the motion to suppress, the arresting officer testified that he observed McGee in an alley by a vacant lot at 11:30 p.m. McGee appeared to be just standing in the alley. Id. at 558. The police officer, who was dressed in a police uniform, stopped his vehicle to ask McGee his name and determine why he was in the alley. Id. As McGee started to walk toward the police officer, he suddenly changed directions and started running away. Id. The officer chased McGee for a few blocks and was able to stop McGee, at which time McGee threw a piece of paper to the ground which contained cocaine. Id. The police officer testified that he was familiar with the area where McGee had been standing and that he had personally made more than 100 narcotics arrests in that area during the past year. Id. at 558-59. The Second District, relying upon Wardlow, noted that the Supreme Court held that unprovoked flight upon noticing police was a pertinent factor in determining reasonable suspicion. Id. at 559.
In F.E.A., an Escambia County Sheriff's Deputy was patrolling a closed ballpark. County authorities had requested a deputy's patrol because there had been numerous instances of criminal mischief and burglaries at the ballpark. See 804 So.2d at 528-29. At approximately 9:30 p.m., as the deputy began to patrol the ballpark, he observed a car with its lights off, parked at the closed ballpark, and saw a male run from the ballpark's field, jump in the car, and speed away. Id. at 529. The deputy followed and stopped the car at a convenience store a few blocks away for further investigation. Id. When the deputy approached, he smelled a strong odor of marijuana coming from the car, so he called a K-9 unit to conduct a search of the car. Id. During the search, cannabis, paraphernalia, and alcoholic beverages were found. Id. The First District, in affirming the trial court's denial of the motion to suppress, held that flight in a high crime area upon approach of a deputy justified the investigatory stop.
In the instant case, although Lee was in an area known for numerous arrests for the sale of narcotics, he did not flee upon the arrival of law enforcement. In the words of Tianga, he "dispersed." Lee *583 "walked quickly." Under the totality of the circumstances there was no reasonable suspicion to conduct an investigatory stop. Therefore, requesting Lee to remove his hand from his pocket was unlawful and the evidence of crack cocaine is suppressed. The convictions for possession of cocaine and violation of probation are reversed.
REVERSED.
SHAHOOD and MAY, JJ., concur.
NOTES
[1] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).