# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 15, 2005 Session

## STATE OF TENNESSEE v. ANTONIO D. JONES

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-A-290     Mark Fishburn, Judge**

---

**No. M2004-01349-CCA-R3-CD - Filed August 12, 2005**

---

Following a bench trial, the Appellant, Antonio D. Jones, was convicted of one count of Class B felony possession of cocaine, one count of simple possession of marijuana, and one count of criminal trespass. The Appellant was sentenced to twelve years for felony possession of cocaine, eleven months and twenty-nine days for possession of marijuana, and thirty days for trespassing. All sentences were ordered to run concurrently for an effective sentence of twelve years. On appeal, the Appellant argues that the evidence presented at trial was insufficient to establish his guilt of possession of over .5 grams of cocaine with intent to sell. He also argues that the trial court erred by denying his motion to suppress evidence seized during a warrantless search. After review, we conclude that the trial court erred in denying Jones' motion to suppress. Accordingly, the judgments of conviction for possession of marijuana and felony possession of cocaine are reversed and remanded for a new trial. Jones' conviction for criminal trespass is affirmed.

**Tenn. R. App. P. 3, Appeal as of Right; Affirmed in Part; Reversed in Part and Remanded**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., filed a separate concurring opinion, and THOMAS T. WOODALL, dissented.

Richard McGee, Nashville, Tennessee; and James O. Martin, Nashville, Tennessee, for the Appellant, Antonio D. Jones.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Pamela Sue Anderson, Assistant District Attorney General; and Tammy Meade, Assistant District Attorney General, for the Appellee, the State of Tennessee.

# OPINION

## Factual Background

During the afternoon of August 5, 2001, Officer Richard Martin of the Metro Davidson County Police Department was patrolling the area near 156 Charles E. Davis Boulevard in Nashville. While in the area, Martin noticed the Appellant loitering on Metropolitan Development and Housing Agency ("MDHA") property, which was posted "no trespassing." Officer Martin admitted that when he initially approached the Appellant, he was unaware of the Appellant's identity or if the Appellant lived at the MDHA facility. However, Martin recognized the Appellant as the individual with whom he had attempted to speak the prior week in the same area. On that occasion, the Appellant had run away when Martin approached. Not wanting to "spook" the Appellant this time, Officer Martin parked his patrol car down the street and out of view and "tried to walk back without letting [the Appellant] know I was coming to talk to him."

Martin's plan, however, was thwarted when the Appellant observed the officer approaching him. As soon as they made eye contact, the Appellant began to walk "briskly" in the other direction and proceeded "some distance" to a car parked on the public street.[1] Officer Martin followed the Appellant, and upon his approach to the vehicle, he observed the rear door open and the Appellant seated in the back seat with one foot on the ground and his hands in his pockets. The officer asked the Appellant to remove his hands from his pockets, and the Appellant complied. Officer Martin then asked the Appellant to "step from the vehicle" and asked if he could talk to the Appellant. The Appellant stepped from the vehicle as requested. At this point Officer John Melzoni, who was also in the area, joined Officer Martin. With Melzoni present, Martin asked the Appellant for permission to search his person, and the Appellant consented. Martin turned the Appellant around to face Melzoni, patted him down, and searched his pockets. In one pocket, Martin found eighteen dollars in cash and a plastic bag containing 1.7 grams of rock cocaine. In the other pocket, he found two thousand dollars in cash. Wrapped inside the cash was a plastic bag containing approximately two grams of marijuana. Inside that bag was another bag containing powdered cocaine. The Appellant was placed under arrest. The officers later discovered that the Appellant did not live on MDHA property and charged him with criminal trespass, in addition to the drug-related charges.

On February 15, 2002, a Davidson County grand jury returned a three-count indictment charging the Appellant with possession of over .5 grams of cocaine with the intent to sell or deliver, possession of marijuana, and criminal trespass. The Appellant filed a motion to suppress the evidence upon grounds that he was unlawfully seized at the time the search was conducted. The trial court denied the motion, finding that Officer Martin's initial approach and questioning of the Appellant was constitutionally permissible and that the Appellant voluntarily consented to a search of his person. On January 26, 2004, a bench trial was held, and the Appellant was convicted of the drug offenses as charged in the indictment based upon his possession of the controlled substances. At trial, Officer Martin testified that no trespassing signs were posted on the MDHA property and

---

[1]Officer Melzoni, who was also at the scene, testified that the Appellant "ran" to the parked vehicle.

that the Appellant stated he did not live "on MDHA property." The Appellant was subsequently sentenced to twelve years for the cocaine conviction, eleven months and twenty-nine days for the marijuana conviction, and thirty days for the trespass conviction. After his motion for new trial was denied on May 5, 2004, the Appellant filed the instant appeal.

**Analysis**

**A. Motion to Suppress**

On appeal, the Appellant argues that he was illegally seized by Officer Martin when the officer initially pursued him from MDHA property to the parked car. Following an evidentiary hearing, the trial court denied the Appellant's motion to suppress concluding that the Appellant's consent to search arose from a consensual encounter with the police, who at the time were acting within the community caretaking or public safety function. Alternatively, the trial court found that Officer Martin had reasonable suspicion to conduct an investigatory stop of the Appellant because the Appellant had tried to evade the officer on this occasion, run from the officer on a previous occasion, and because the Appellant engaged in furtive movements such as placing his hands in his pockets.

The findings of fact by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

Neither the Fourth Amendment of the United States Constitution nor Article I, Section 7 of the Tennessee Constitution limits all contact between police and citizens. Instead, the purpose and intent of Article I, Section 7, identical with that of the Fourth Amendment, is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." *State v. Simpson*, 968 S.W.2d 776, 779 (Tenn. 1998) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)). Thus, these constitutional protections are implicated only when a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen. *Daniel*, 12 S.W.3d at 424.

Courts have recognized three types of police-citizen interactions when construing the demands of the Fourth Amendment: (1) a full scale arrest which must be supported by probable cause, *Brown v. Illinois*, 422 U.S. 590, 95 S. Ct. 2254 (1975); (2) a brief investigatory detention which must be supported by reasonable suspicion, *Terry v. Ohio*, 392 U.S. 1, 11 S. Ct. 1000 (1968); and (3) brief police-citizen encounters which require no objective justification, *Florida v. Bostick*, 501 U.S. 429, 111 S. Ct. 2382 (1991). *United States v. Berry*, 670 F.2d 583 (5th Cir. 1982) (discussing the three types of police-citizen interactions); *Daniel*, 12 S.W.3d at 424. While arrests and investigatory detentions implicate varying degrees of constitutional protection, "not all personal

intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Daniel*, 12 S.W.3d at 424 (quoting *Terry*, 392 U.S. at 19 n.16, 88 S. Ct. at 1868).

"[C]ourts have repeatedly held that even when police have no basis for suspecting that an individual has committed or is about to commit a crime, the officer may approach an individual in a public place and ask questions without implicating constitutional protections." *Daniel*, 12 S.W.3d at 425. The United States Supreme Court further explained the rule:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds.

*Florida v. Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 1324 (1983) (citations omitted). Accordingly, a "seizure" implicating constitutional protections occurs when, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980). A majority of the United States Supreme Court limited this standard in 1991 by holding that a seizure occurs for purposes of the Fourth Amendment only where an officer uses physical force to detain a person or where a person submits or yields to a show of authority by the officer. *California v. Hodari D.*, 499 U.S. 621, 626, 11 S. Ct. 1547, 1550 (1991). However, because Article I, Section 7 of the Tennessee Constitution may extend greater privacy protections to the citizens of this State when appropriate, our supreme court rejected the *Hodari D.* majority's analysis on state constitutional grounds in *State v. Randolph*, 74 S.W.3d 330, 336 (Tenn. 2002). The court held that under Article I, Section 7 of the Tennessee Constitution, in determining whether a person has been seized, the proper standard is that set forth by the United States Supreme Court in *Mendenhall, i.e.* whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave." *Randolph*, 74 S.W.3d at 336 (quoting *Mendenhall*, 446 U.S. at 554, 111 S. Ct. at 1557-58).

The Tennessee Supreme Court has identified factors that are relevant to the totality of the circumstances test in determining whether an unlawful detention has occurred:

> "[T]he time, place and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others who

were present during the encounter; the threatening presence of several officers; the display of a weapon by an officer; and the physical touching of the person of the citizen."

*Randolph*, 74 S.W.3d at 337 (quoting *Daniel*, 12 S.W.3d at 425). Furthermore, in *Daniel*, the Court stated that while this analysis is "necessarily imprecise," there are several police encounters generally held to constitute "seizures":

"[where the officer] (1) pursues an individual who has attempted to terminate the contact by departing; (2) continues to interrogate a person who has clearly expressed a desire not to cooperate; (3) renews interrogation of a person who has earlier responded fully to police inquiries; (4) verbally orders a citizen to stop and answer questions; (5) retains a citizen's identification or other property; (6) physically restrains a citizen or blocks the citizen's path; (7) displays a weapon during the encounter."

*Id*. (quoting *Daniel*, 12 S.W.3d at 426). When considering whether an encounter between an officer and a citizen amounts to an investigatory stop requiring reasonable suspicion or if it was merely an officer requesting information, insufficient to establish a belief that the individual would not be free to leave, courts must employ the objective standard of the reasonable person in like circumstances, so as to ensure that "the scope of these constitutional protections does not vary depending upon the subjective state of mind of the particular citizen being approached." *Daniel*, 12 S.W.3d at 425. Indeed, as observed in *Bostick*, 501 U. S. at 438, 111 S. Ct. at 2388, "the 'reasonable person' test presupposes an innocent person."

The State's argument on appeal is twofold. First, the State argues that the search resulted from a brief "police-citizen encounter;" thus, Fourth Amendment concerns are not implicated. Second, it contends that in the event a seizure occurred, reasonable suspicion existed to support an investigatory stop. In support of the later argument, the State relies upon the trial court's findings that upon the officer's approach, the Appellant walked "briskly" away, the Appellant's "furtive movements such as placing his hands in his pockets and jumping hurriedly into a parked vehicle," and the Appellant's flight from the officer the previous week. The State's argument that the Appellant's "briskly" walking away, jumping hurriedly into a car, and previously attempting to avoid the police constitute a basis for reasonable suspicion is clearly contrary to our supreme court's holding in *Randolph*, which expressly rejected the *Hodari D.*, holding. The "use of flight or refusal to submit to authority as reason to execute an arrest or search" is subject to potential abuse by officers who pursue a subject without reasonable suspicion. *Randolph*, 745 S.W.3d at 336. With regard to the trial court's finding of "furtive movements," we leave the definition of this elusive term for another day but conclude that the placing of one's hands into a pocket is not *per se* suspicious conduct. At the bench trial, Officer Martin testified that the Appellant was standing alone on MDHA property during daylight hours and that he saw nothing to believe that the Appellant was "engaging in any criminal activity at that point." We conclude that the facts in this case do not support a

reasonable, articulable suspicion of criminal activity to justify an investigative stop as authorized by *Terry*.

Next, the State argues that the search resulted from a consensual police-citizen encounter. As previously recited, the facts establish that the Appellant, upon observing the officer's approach, walked "briskly" away from the officer to avoid contact. The officer followed the Appellant "some distance" to his vehicle. After entering the vehicle, the Appellant was asked to take his hands out of his pockets. Next, the Appellant was asked to step out of the car.

Implicit in the determination of whether the encounter was consensual is the question of whether the officer's conduct represents a show of authority which an innocent person encountered would feel obligated to stop and respond to. Thus, "[i]f in the totality of the circumstances, a reasonable person believes he or she would be required to comply with the officer's request, the individual is seized, constitutional protections are triggered, and reasonable suspicion is required." *Daniel*, 12 S.W.3d at 425. Police conduct requires scrutiny under the totality of the circumstances of the encounter rather than compartmental review of the events.

We conclude from these facts that an innocent citizen after "attempt[ing] to terminate [police] contact by departing,"[2] after being asked to remove his/her hands from his/her pockets, and after being asked to get out of their car, would not have felt free to disregard the immediate presence of the two uniformed officers and simply walk away. A totality review of the officer's actions under these facts would demonstrate to a reasonable person a show of authority which converted the encounter into an investigatory stop without reasonable suspicion. Thus, we conclude that the "officer's interaction with the [Appellant] impermissibly intrude[d] upon the privacy or personal security of the [Appellant]" resulting in his seizure. *Id*. at 424. To sustain the State's position in this case would mean that the police could order citizens out of their automobiles under almost any circumstances.

Notwithstanding our holding under the greater protections of Article 1, Section 7 of the Tennessee Constitution, other jurisdictions applying federal constitutional analysis have concluded similarly. The following caselaw decisions are noted in which a police request or order to step from a vehicle was held to constitute a seizure of the person. *Mitchell v. U. S.*, 746 A.2d 877, 889 (D. C. Cir. 2000) (citing *Berkemer v. McCarthy*, 468 U. S. 420, 439, 104 S. Ct. 3138 (1984)); *Frette v. City of Springdale*, 959 S.W.2d 734, 735-37 (Ark. 1998); *Popple v. State*, 626 So. 2d 185, 188 (Fla. 1993).

Additionally, appellate decisions in Florida have consistently held that orders or even requests to remove a hand from a pocket cause a consensual encounter to become a seizure. *See Lee v. State*, 868 So. 2d 577, 579-90 (Fla. 2004); *see also Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999). As previously established by the facts in this case, the Appellant was asked both to remove his hands from his pockets and to step out of the vehicle.

---

[2]Factor 1, *Randolph,* 74 S.W.3d at 337.

Notwithstanding the unlawful seizure, we must next determine whether the Appellant's consent, obtained during the illegal detention, was obtained by exploitation of the Fourth Amendment illegality. *State v. Huddleston*, 924 S.W.2d 666, 674 (Tenn. 1996) (citing *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963)). Applying the considerations of *Huddleston*, the record does not reflect that Miranda warnings were provided to the Appellant. Moreover, the proof establishes that the Appellant's consent immediately followed the illegal seizure and that no intervening event occurred between the consent and the search. These facts weigh against a finding of attenuation of the taint. Accordingly, we conclude that the search and resulting seizure of the cocaine and marijuana was unreasonable under Fourth Amendment protections.

## CONCLUSION

For the above reasons, we conclude that the trial court erred in denying the Appellant's motion to suppress based upon his unlawful seizure. Accordingly, the Appellant's conviction for felony possession of cocaine with the intent to sell in excess of .5 grams and his conviction for simple possession of marijuana are reversed and remanded for a new trial. The Appellant's conviction for criminal trespass is affirmed based upon the proof introduced at trial.

_____
DAVID G. HAYES, JUDGE