CASANUEVA, Judge.
D.R. appeals from an adjudication of delinquency following her plea to misdemeanor possession of marijuana in which she reserved the right to contest the denial of her dispositive motion to suppress. She claims that the State failed to present sufficient evidence to establish that the police officer had a reasonable suspicion to perform a stop, during which he observed a baggie of marijuana in her mouth. We agree and reverse.
D.R. and her cousin, who was pushing a baby in a stroller, were walking in the center of the street in D.R.’s grandmother’s neighborhood, an area lacking sidewalks. Two officers coming from an unspecified police operation encountered the two girls. The officers wore clothing that identified them as police. They drove their unmarked car alongside D.R. and her cousin with the intent to advise them not to walk in the middle of the street but to use the side of the road. D.R., apparently noticing that the occupants of the car were law enforcement officers, began running away from the vehicle while shouting “POLICE!” The officers gave chase on foot, calling out to D.R. to stop and return to them, which she did. As they were speaking with her, one officer smelled the odor of marijuana on D.R. and observed a baggie of marijuana in her mouth, which he required her to remove.
Both parties agree that this case is controlled by Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000), which held that a person’s presence in an area known for heavy narcotics trafficking, coupled with his or her unprovoked flight upon noticing the police, is a pertinent factor in determining whether an officer has reasonable suspicion to conduct a Terry[1] stop. See also E.B. v. State, 866 So.2d 200, 203 (Fla. 2d DCA 2004) (observing that the record did not contain sufficient facts to suggest that the area where the juvenile was stopped was a high crime area). The parties also agree that D.R.’s flight was unprovoked. But D.R. challenges the State’s contention that it proved that her unprovoked flight occurred in a “high crime area.”
Thus, the issue is whether the State’s evidence was legally sufficient to establish one of the two Wardlow factors: the suspect’s presence in a high crime area. It is not our function to reweigh the evidence but only to determine whether it is sufficient to establish the required element. In doing so we do not demand empirical studies or statistical data.
The critical testimony in the dispositive motion to suppress concerned a Tampa residential neighborhood. Prior to offering his conclusion that the neighborhood was a known high crime or narcotics area, the arresting officer, a member of the Tampa Police Department’s Narcotics Squad, testified: “I haven’t worked over in that area for awhile but there’s multiple narcotic complaints that go out there.” No other evidence was offered by the State in direct examination. The evidence adduced established only that the officer’s knowledge of the area was not current and that an undetermined number of narcotics arrests took place there at some unknown time. This vague and presumptively stale evidence failed to confirm that crime or narcotics transactions were prevalent in the neighborhood at the time this officer encountered D.R.
*538 On cross-examination, the officer provided no details regarding the number of arrests in the neighborhood: “I don’t normally work that area so I wouldn’t have any knowledge of my personal arrests but if you did an address ... you’d be able to see several times.” When pressed for statistics on the number of criminal incidents, the officer offered nothing except to “make a phone call for you and get that for you if you really need it.”
The officer’s testimony about his knowledge of the area was unsupported by any facts shared with the court that would suggest that the suspect’s unprovoked flight occurred in a high crime area; there was no testimony about the “relevant characteristics” of the location that would determine “whether the circumstances [were] sufficiently suspicious to warrant further investigation.” Wardlow, 528 U.S. at 124, 120 S.Ct. 673. The burden of proof rests with the State, and the officer’s testimony suggests strongly that more detailed evidence about the current status of the neighborhood could have been provided. As it was, however, the officer’s out-of-date conclusion, unreinforced by specific, contemporary information,[2] was legally insufficient to satisfy the Fourth Amendment. See Tibbs v. State, 397 So.2d 1120 (Fla.1981).
We reverse D.R.’s adjudication of delinquency and remand with instructions to dismiss the case and discharge her.
FULMER, C.J., and NORTHCUTT, J., Concur.

. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. Although arrest statistics or information provided by regular police departmental briefings might be sufficient, we do not decide the nature or type of evidence necessary to establish an area as a high crime area, as that issue is not before us. We hold here only that there was no competent evidence to prove this requirement in this case.