TAYLOR, J.
The issue in this appeal from the denial of a motion to suppress evidence is whether a seizure occurred when appellant complied with an officer’s repeated requests to remove his hands from his pockets. We conclude that a seizure did occur, and we reverse the denial of the motion to suppress because the officer lacked a well-founded articulable suspicion of criminal activity to justify the seizure.
Appellant, a juvenile, pled no contest to possession of less than 20 grams of cannabis, reserving the right to appeal the denial of his motion to suppress evidence. At the hearing on the motion to suppress, a deputy of the Broward County Sheriffs Office testified that late in the evening, while on duty, he received an anonymous report of “suspicious persons” in an area within the City of Lauderdale Lakes. The anonymous caller advised that there were “two black males in the area wearing all black.” The deputy was dispatched as a result of the call but was not able to find anybody in the immediate area reported by the caller. While circling the area, however, the deputy observed appellant *1253 and another juvenile, who were both wearing black.
When the juveniles made eye contact with the deputy, they immediately went into a food store “in a rush.” The deputy was suspicious as to why they would run into the store for no apparent reason. The deputy then pulled into the store parking lot and entered the store at a normal pace.
The deputy approached appellant and said, “Can I talk to you for a minute?” Appellant replied, “Yeah. What do you want?” The deputy noticed that appellant kept his hands in his pockets and asked appellant to remove his hands from his pockets. The deputy testified that he did this for officer safety issues. Appellant kept his right hand in his pocket while gesturing with his left hand as he spoke to the deputy. The deputy thought appellant was hiding something in his pocket.
The deputy again asked appellant to remove his hands from his pockets. At that point, appellant put his left hand back in his pocket, so that he then had both hands in his pockets. The deputy then asked appellant where he was coming from. Appellant responded, “Man, we’re just coming from down the street.” The deputy asked appellant yet another time to remove his hands from his pockets and said to appellant, “What do you have in your pockets? Do you have any guns, knives, weapons; anything you [think] I need to ... know about?”
In compliance with the deputy’s last request, appellant removed his hands from his pockets. A marijuana cigarette fell to the ground. The deputy picked up the cigarette, took appellant outside the store, and handcuffed him. The cigarette tested positive for THC. Before the marijuana cigarette fell to the ground, the deputy stood at arm’s length while speaking to appellant and did not touch him.
On cross-examination, the deputy admitted that the dispatcher only said that there were suspicious persons walking in the area; he did not give any details of what they were doing to arouse suspicion other than to report that they were walking there. He further acknowledged that the anonymous caller only said that the suspicious persons were black and wearing black clothing; he never gave a height or weight or any other information when describing them. When the officer encountered appellant and his companion, he observed that appellant was wearing a black shirt with blue jeans, not black pants. The other male was wearing a black shirt, but the officer could not recall the color of the other male’s pants. The officer conceded that he did not see any bulges from appellant’s pants that appeared to be weapons.
After considering the testimony and arguments of counsel at the suppression hearing, the trial court concluded that under the totality of the circumstances, appellant’s interaction with the deputy was a consensual encounter and that no seizure occurred until the deputy arrested appellant for the marijuana cigarette that fell from his pocket. The trial court found that the deputy “didn’t seem to convey any sense of a command or any attempt to exert authority” when he requested appellant to remove his hands from his pockets. After the court denied the motion to suppress, appellant pled no contest to the marijuana possession charge and reserved the right to appeal the denial of the motion to suppress. Appellant was sentenced to time served.
Appellant argues that the deputy’s request to remove his hands from his pockets converted the initial consensual encounter in the store into a seizure requiring reasonable suspicion of criminal activity in order to be found lawful. He contends that the seizure was not sup *1254 ported by reasonable suspicion, because the anonymous tip that led to the incident did not contain specific details, and there was no corroboration by independent police investigation.
The state responds that the deputy’s requests did not transform the consensual encounter into a seizure and that, even if the encounter did become a seizure, there was a founded suspicion to detain appellant.
“A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Terry v. State, 668 So.2d 954, 958 (Fla.1996). An appellate court is bound by the trial court’s findings of historical fact if those findings are supported by competent, substantial evidence. Pagan v. State, 830 So.2d 792, 806 (Fla.2002); Hunter v. State, 32 So.3d 170, 173 (Fla. 4th DCA 2010). However, an appellate court applies a de novo standard of review to the mixed questions of law and fact that ultimately determine constitutional issues. See Schoenwetter v. State, 931 So.2d 857, 866 (Fla.2006); Falls v. State, 953 So.2d 627, 629 (Fla. 4th DCA 2007).
Florida case law has described three levels of police-citizen encounters: 1) a consensual encounter involving minimal contact during which the citizen is free to leave; 2) an investigatory stop or detention which requires a well-founded suspicion of criminal activity; and 3) an arrest supported by probable cause that a crime has been committed, or is being committed. Regalado v. State, 25 So.3d 600, 602 (Fla. 4th DCA 2009) (citing Popple v. State, 626 So.2d 185, 186 (Fla.1993)). “During a consensual encounter a citizen may either voluntarily comply with a police officer’s requests or choose to ignore them. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked.” Popple, 626 So.2d at 186. While there is no “litmus-paper test” for distinguishing a consensual encounter from a seizure, “a significant identifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person’s freedom to leave or freedom to refuse to answer inquiries.... ” Id. at 187. In determining whether an encounter is consensual, the central inquiry is whether a reasonable person would feel free to disregard the police and go about his business. See State v. R.H., 900 So.2d 689, 692 (Fla. 4th DCA 2005).
In United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the Supreme Court adopted a “totality of the circumstances” approach to determining whether a person has been seized within the meaning of the Fourth Amendment. The Court explained that a person has been “seized” within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Among the circumstances mentioned in Mendenhall that might indicate a seizure is “the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.” Id. at 554, 100 S.Ct. 1870. The Supreme Court later clarified in California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), that a seizure occurs when the person submits to the officer’s show of authority.
We are mindful of the Supreme Court’s “clear direction that any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account ‘all of *1255 the circumstances surrounding the incident’ in each individual case.” Michigan v. Chesternut, 486 U.S. 567, 572, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). The Mendenhall test is flexible and imprecise, and the Florida Supreme Court has pointed out that “per se rules are inappropriate in the context of Fourth Amendment seizure analyses.” See G.M. v. State, 19 So.3d 973, 979 (Fla.2009). Yet, the test “calls for consistent application from one police encounter to the next,” and the “reasonable person” standard “ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.” Chesternut, 486 U.S. at 574, 108 S.Ct. 1975.
Our court has consistently held that orders, or even requests, to remove one’s hand from a pocket will elevate a consensual encounter to the level of an investigatory detention. See Lee v. State, 868 So.2d 577, 579-80 (Fla. 4th DCA 2004); see also Gestewitz v. State, 34 So.3d 832, 835 (Fla. 4th DCA 2010); Johnson v. State, 989 So.2d 1228, 1230 (Fla. 4th DCA 2008); Delorenzo v. State, 921 So.2d 873, 876 (Fla. 4th DCA 2006).
The facts in Lee are virtually indistinguishable from those in this case. There, an officer received an anonymous call that there was a “ ‘black male or several black males ... loitering on the street corner, selling narcotics.’ ” 868 So.2d at 578. The tip did not furnish any other identifying information. Id. When the officer arrived at the location, he observed several black males loitering on the street corner. Id. at 579. They dispersed when the officer’s marked vehicle approached. Id. The officer did not see Lee engage in any drug activity before he went behind a duplex. Id. As Lee was walking quickly toward the officer with his hand in his pocket, the officer requested that Lee remove his hand from his pocket for the officer’s safety. Id. Lee took his hand out of his pocket and dropped a crack cocaine rock on the ground. Id.
In reversing the trial court’s denial of Lee’s motion to suppress, we disagreed with the state’s argument that the mere request by the officer that Lee take his hand out of his pocket was insufficient to constitute a stop. Instead, we followed Harrison v. State, 627 So.2d 583, 584 (Fla. 5th DCA 1993), which held that a consensual encounter between a police officer and the defendant evolved into a seizure when the officer told the defendant to take his hand out of his pocket. Harrison referenced the holdings of other Florida district courts that have similarly ruled that orders or even requests to remove a hand from a pocket caused a consensual encounter to become a seizure.[1] We note, however, that the Second and Fifth Districts have held that such a request, when made to ensure an officer’s safety, does not elevate a consensual encounter to a detention. See State v. Woodard, 681 So.2d 733, 735 (Fla. 2d DCA 1996); Lang v. State, 671 So.2d 292, 294 (Fla. 5th DCA 1996); Sander v. State, 595 So.2d 1099, 1100 (Fla. 2d DCA 1992).
Considering the facts and circumstances in this case, we have no difficulty concluding that appellant was “seized” when he complied with the deputy’s order to remove his hands from his pockets. The deputy’s request, which was repeated several times, constituted a show of authority which would have conveyed to a reasonable person that his movement was being restricted and that he was not free *1256 to disregard the officer and go about his business. A reasonable person would have interpreted the deputy’s repeated requests as a command, not a suggestion. We thus adhere to the traditional contextual approach to Fourth Amendment jurisprudence and hold only that, in this particular case — where the deputy repeatedly requested that appellant remove his hands from his pockets so as to convey a message that compliance with the request would be compelled — a seizure occurred when appellant submitted to the deputy’s show of authority.
The state alternatively argues that even if the deputy’s conduct constituted a seizure or investigatory stop, the stop was supported by a reasonable suspicion. We disagree.
A reasonable suspicion “is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.” Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). But an “inchoate and unparticularized suspicion or ‘hunch’ ”' of criminal activity will not suffice. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To justify an investigatory stop, there must be a well-founded, articulable suspicion of criminal activity. Popple, 626 So.2d at 186. Here, the officer did not have a well-founded, articulable suspicion of criminal activity.
“While an anonymous tip can provide the basis for an investigatory stop, the tip must contain sufficient indicia of reliability to furnish the police with reasonable suspicion that defendant is engaged in criminal activity; such reliability is judged by (a) its specificity and (b) independent police corroboration of significant aspects of the informant’s predictions.” Lee, 868 So.2d at 580. In this case, the anonymous tip contained no specific details and failed to allege any illegal activity at all; it simply reported that there were two “suspicious” black males walking around at night wearing all black clothing. Further, the tip was not fully corroborated even as to the “all black clothing” description. In short, the anonymous tip did not give the officer reasonable suspicion that appellant was involved in criminal activity. See Baptiste v. State, 995 So.2d 285, 301 (Fla.2008) (“[W]hen investigating an anonymous tip, officers who are unable to independently corroborate criminal activity may not initiate a gunpoint seizure based upon confirmation of only innocent details — such as a physical description — with absolutely no observation or development of any suspicious behavior.”) (emphasis added); Regalado, 25 So.3d at 603 (explaining that “the information supplied by the tipster must be of illegal activity to constitute reliable information for investigation”) (emphasis added). In fact, the tip was much less specific than other anonymous tips that were deemed insufficient to give rise to reasonable suspicion. See, e.g., Butts v. State, 644 So.2d 605, 605-06 (Fla. 1st DCA 1994) (finding anonymous tip deficient where it stated only that a black male with grey beard, wearing black cap, grey pants and black jacket was riding a bicycle, had a gun in his pocket, and was possibly selling drugs; the tip contained no predictions regarding the defendant’s future movements or activities).
Moreover, while headlong flight in a high crime area may provide an officer with a reasonable suspicion to investigate further, reasonable suspicion of criminal activity is not established simply because a defendant leaves the scene when an officer nears. See F.E.A. v. State, 804 So.2d 528, 529 (Fla. 1st DCA 2002). Here, it is not clear whether appellant’s act of rushing into the store after the patrol car ap *1257 proached constituted “flight” or “headlong flight.” Cf. Lee, 868 So.2d at 581-83 (concluding that dispersing or walking quickly away from the scene upon the arrival of law enforcement did not constitute flight or “headlong flight”). But assuming, ar-guendo, that appellant’s act of running into a store after seeing the officer’s patrol car constituted flight, there was no evidence that this occurred in a high crime area. See D.R. v. State, 941 So.2d 536, 537-38 (Fla. 2d DCA 2006) (holding that evidence was insufficient to establish that juvenile’s unprovoked flight from officer occurred in a high crime area, and thus officer did not have reasonable suspicion to conduct an investigatory stop).
Finally, appellant’s act of keeping his hands in his pockets did not give the police officer reasonable suspicion to believe that appellant was involved in criminal activity. See United States v. Burton, 228 F.3d 524, 529 (4th Cir.2000) (defendant’s refusal to remove his hand from his pocket was insufficient to give police officer reasonable suspicion that criminal activity was afoot); see also State v. Barnes, 979 So.2d 991, 993 (Fla. 4th DCA 2008) (“The mere thrusting of one’s hand in one’s pocket in front of a police officer does not constitute conduct which supports a founded suspicion that an individual is armed and dangerous.”) (citation and internal quotation marks omitted; emphasis in original). Before the officer was entitled to allay his safety concerns, he had to be presented with objective facts that would justify an investigatory Terry stop. Burton, 228 F.3d at 528. “In the absence of reasonable suspicion, the officer’s alternative was ‘to avoid a person he considers dangerous.’ ” Id. (quoting Terry, 392 U.S. at 32, 88 S.Ct. 1868).
In sum, when appellant complied with the deputy’s repeated requests to take his hands out of his pockets, the consensual encounter in the store turned into a stop. At that point, the deputy did not have a well-founded, articulable suspicion that appellant was involved in any criminal activity so as to justify the stop. We therefore reverse the order denying appellant’s motion to suppress and remand with directions to vacate the adjudication of delinquency.

Reversed and Remanded.

LEVINE, J., concurs.
GERBER, J., dissents with opinion.

. See Johnson v. State, 610 So.2d 581 (Fla. 1st DCA 1992); Dees v. State, 564 So.2d 1166 (Fla. 1st DCA 1990); Canion v. State, 550 So.2d 562 (Fla. 4th DCA 1989); Evans v. State, 546 So.2d 1125 (Fla. 3d DCA 1989).