DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HENOCK DIEUJUSTE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D17-3842, 4D17-3858, and 4D17-3867

[May 15, 2019]

Consolidated appeals from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barbara R. Duffy, Judge; L.T. Case Nos. 15-0547CF10A, 15-6593CF10A, 17-2606CF10A.

Carey Haughwout, Public Defender, and Jaime Lapidus, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Appellant challenges the denial of his motion to suppress, after which he pled guilty and was convicted of possession of cocaine. This conviction also formed the sole basis for revocation of probation in two other cases, all of which have been consolidated in this appeal. He contends that he was stopped by law enforcement without a reasonable suspicion, thus tainting the ensuing search. We agree that reasonable suspicion did not exist to stop appellant and reverse.

The State charged appellant with possession of cocaine after drugs were found on appellant after a stop in a shopping center parking lot. He moved to suppress the evidence. At the hearing on the motion, only one officer of the four present during the incident testified. This officer testified that he was dispatched based on an anonymous call regarding a black male with dreads, wearing designer pants with glitter on the back side of the pants, standing by a convertible black Camaro parked in front of a liquor store. The anonymous caller said that the individual was dealing drugs out of the vehicle. The caller described the car as being "filled with drugs." The

officer responded to the location, which was in a shopping center. In addition, at least four other officers responded, although it is unclear from the record or the videos produced how many sheriff's vehicles were present.

When the officer arrived, he observed a black Camaro, with a male matching the description from the anonymous call standing at the driver's side of the Camaro, and appellant was standing at the passenger side. Two other individuals were seated in the vehicle. The officer did not conduct any surveillance or observe any illegal conduct as he approached. As soon as appellant saw the officer, who was in uniform, get out of the police vehicle, appellant walked quickly back to the vehicle door, bent down, and was pulling on the center console. The officer was directly behind him, and the officer pulled his gun as appellant bent down. He ordered appellant to stand up and asked him what he had put under the console. Appellant responded "nothing." The officer testified that he knew it was a plastic bag because he could hear the "crinkle" of plastic, and he saw a tiny corner of the bag. At that point, the officer moved appellant away from the door of the vehicle, ordered him to put his hands up, and then placed him in handcuffs. The officer said that as he was speaking to appellant he faintly smelled marijuana. He searched the passenger compartment of the vehicle and found crack cocaine hidden underneath where he had seen appellant pulling out the center console. He field tested the substance, and it tested positive for cocaine. He did not find any marijuana or residue. When asked about why he pulled his gun, he said that he could not see what appellant was doing in the vehicle or if he was reaching for a weapon. The court asked him if he were in fear, and the officer responded that he was because of how fast appellant went back to the vehicle.

Two videos from bodycams of other officers present were shown to the court. Each video began after the initial stop of appellant, but in the videos, the testifying officer is seen searching the vehicle. He searched the entire vehicle prior to searching around the console, where he found one rock of crack cocaine.

The court denied the motion to suppress, concluding that although the tip alone did not justify a stop, appellant's actions as the officer approached did:

> So the tip in this particular case is clearly insufficient to allow an investigatory stop. But, however, that's not what happened in this case. The actions of the—I'm sorry, the deputy, were not based upon the tip, the anonymous tip, but instead based upon the actions of Mr. Dieujuste. The

2

testimony was that the deputy exited his vehicle, or as he was exiting his vehicle he had no intention to stop anyone. More akin to a consensual encounter, but before he could even engage in any kind of consensual encounter, Mr. Dieujuste immediately turned and quickly proceeded to the open passenger door of a motor vehicle, bent down, and started placing something in the console. He heard what sounded like a bag. What was in the potential bag, the officer did not know.

As a result, fearing for his safety, the deputy pulled his weapon, and gave the defendant orders to show his hands, which he had every legitimate right to do. He had no idea what the defendant was doing. The defendant's conduct is what resulted in the stop, not the anonymous tip. While at the car, dealing with the defendant, whose actions caused the deputy to in fact fear that something—fear for his life. He doesn't know [if] there's a gun that's being stashed in there. Where others could possibly have access to it. That's when he smelled the burnt cannabis which at that time clearly was sufficient for probable cause. And exigent circumstances as well[.]

Appellant then pled guilty, reserving his right to appeal the denial of the motion to suppress. The court adjudicated him guilty of possession of cocaine and revoked his probation on two earlier charges, based upon his possession of cocaine. He was sentenced, and this appeal follows.

"[W]hen reviewing a ruling on a motion to suppress, an appellate court presumes the trial court's findings of fact are correct and reverses only those findings not supported by competent substantial evidence." *Pierre v. State*, 22 So. 3d 759, 765 (Fla. 4th DCA 2009). The appellate court reviews de novo the court's application of the law to the facts. *Id.*

Appellant contends that he was detained and searched without reasonable suspicion of criminal activity. We agree. *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993), sets out the three levels of police-citizen encounters: 1) a consensual encounter where a citizen is free to leave; 2) an investigatory stop or detention which requires a well-founded suspicion of criminal activity; and 3) an arrest supported by probable cause that a crime has been committed.

The trial court determined correctly that the anonymous tip of drug activity was insufficient to justify the stop of appellant. The tip described

an individual selling drugs from a black Camaro, but appellant did not match the description of the individual selling drugs. More importantly, the anonymous tip's assertion of illegal conduct must be corroborated in some way to establish its reliability. *See Florida v. J.L.*, 529 U.S. 266, 271 (2000) ("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L."). Here, the officers never observed any details that would corroborate the anonymous tip.

The trial court, however, found that appellant's conduct of returning to the vehicle, bending down, and doing something in the vehicle made the officer fear for his safety and justified the stop and search of the vehicle. In this finding, the court erred as a matter of law. In order to justify a stop, there must be a well-founded suspicion of criminal activity. *Popple*, 626 So. 2d at 186; *R.J.C. v. State*, 84 So. 3d 1250, 1256 (Fla. 4th DCA 2012). There were no circumstances in this encounter from which the officer could conclude that criminal activity had occurred, was occurring, or was about to occur. Appellant's retreat to the vehicle did not evidence criminal activity. Indeed, if appellant could not retreat, then he was not free to leave, which circumstance constitutes a seizure for Fourth Amendment purposes. *Popple*, 626 So. 2d at 188. Even where an individual is lawfully stopped in a roadside encounter, law enforcement may not engage in a search unless the police have a reasonable belief that the suspect is armed and dangerous. In *Michigan v. Long*, 463 U.S. 1032, 1049 (1983), the Court explained:

> Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

4

Here, there were no facts, even taken together with the anonymous tip information, from which it could be inferred that the suspect was dangerous and may gain control of a weapon. The tip did not mention weapons at all, and the officer did not observe anything but appellant bending down into the vehicle. What he heard was the crinkle of plastic, which in no way suggests the sound of a gun.

Because there was no reasonable suspicion to stop appellant, the ensuing search of the vehicle also violated the Fourth Amendment. While the officer stated that after ordering appellant to stop, he smelled marijuana, the State conceded at oral argument that the court found that the officer's smell of marijuana occurred after the stop.

In conclusion, the court erred in denying the motion to suppress the contraband found after the stop, which violated the Fourth Amendment. We reverse the convictions and sentences.

GROSS and FORST, JJ., concur.

*  *  *

***Not final until disposition of timely filed motion for rehearing.***